STATE of Tennessee, Appellee,

v.

Robert Howard MEADOWS, Appellant.

No. 86–285–III.

Court of Criminal Appeals of Tennessee, at Nashville.

Nov. 19, 1987.

Permission to Appeal Denied by Supreme Court Feb. 1, 1988.

David L. Raybin, Nashville, for appellant.

W.J. Michael Cody, Atty. Gen., Kimberly L.A. Hattaway, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., Richard H. Fisher, Paul DeWitt, Asst. Dist. Attys. Gen., for appellee.

## OPINION

WILLIAM S. RUSSELL, Special Judge.

Robert Howard Meadows appeals from his convictions on four counts of possession of a controlled substance with the intent to manufacture, deliver, or sell the substance. The first was a conviction of possessing a substance containing cocaine, a Schedule II substance, in excess of 30 grams, for which he was sentenced to pay a fine of $200,000 and serve a term of forty years in the custody of the Department of Correction. The second conviction involved the possession of the substances of methaqualone, pethidine, amphetamine, secobarbital, and oxycodone, Schedule II substances, for which he was sentenced to pay a fine of $15,000 and serve a term of eight years in the custody of the Department of Correction. The third conviction involved diazepam, a Schedule IV substance, for which he was sentenced to pay a fine of $7,000 and serve a term of three years in the custody of the Department of Correction. The fourth count upon which he was convicted involved marijuana, a Schedule VI substance, for which he was sentenced to serve a term of four years in the custody of the Department of Correction. The trial court ordered that the sentences for the offenses set out in counts three and four be served concurrently with each other, but consecutive to the sentences for the offenses described in counts one and two.

The appellant on this appeal raises two basic issues. He contends that the trial judge should have granted his motion to suppress evidence seized under color of a search warrant because (a) the affidavit given in support of the search warrant failed to establish probable cause for the issuance of the warrant, (b) it was a general warrant, and (c) the warrant was not properly executed. He further contends the trial court committed prejudicial error in refusing to charge the jury regarding the inference which arises regarding ownership of drugs found on the property owned by another.

While the appellant does not challenge the sufficiency of the convicting evidence, a summary of the evidence is appropriate to a review of the issues before us.

■ Prior to his arrest the defendant had been the subject of an ongoing drug investigation. Periodically officers would receive information that the defendant was trafficking in narcotics. On each occasion officers would place the defendant's residence under surveillance. However, these efforts were futile; and the information, standing alone, would not support the issuance of a search warrant. The investigation continued for approximately a year prior to the defendant's arrest.

On April 18, 1985, Sergeant James W. McWright, an officer assigned to the Vice Control and Narcotics Division of the Metropolitan Police Department, received information from Jerry Strain, an agent with the State of Tennessee Alcohol Beverage Commission, that the defendant was trafficking in narcotics. According to McWright, Strain received this information from Don Earls, an Alcohol Beverage Commission agent assigned to the Winchester–Manchester area. Earls had received the information from an unnamed, confidential informant. McWright never talked to the informant, and no effort was made to determine the informant's reliability.

Strain advised McWright that the defendant was in possession of a large quantity of

cocaine. The cocaine was supposed to be in the residence of the defendant. According to the information furnished to McWright, the defendant sold cocaine by the ounce. His customers were generally females. The general procedure was for a female to drive her motor vehicle to the rear of the defendant's residence, honk the horn, and wait for a signal from the defendant to enter the residence. Once the defendant signalled the female to enter the residence, she would exit the vehicle, enter the residence, and return to her vehicle a few minutes later.

On April 18, 1985, at about 9 a.m., McWright, along with other law enforcement officers, placed the residence of the defendant under surveillance. That afternoon the officers observed Janet Campbell Shearon, the girl friend of a known drug dealer, Alfonzo Wilson, follow the pattern described by the informant whose reliability hadn't been verified. A check of the license number of the vehicle revealed the registered owner of the vehicle was the wife of Alfonzo "Chicken Red" Wilson, the boy friend of Ms. Shearon and known to the officers as a narcotics dealer. He had previously been convicted of numerous drug related offenses. Ms. Shearon met Wilson at a vacant service station located approximately a mile from the defendant's residence. Officers subsequently stopped the vehicle. A search resulted in the seizure of cocaine and the arrest of the occupants. Obviously, Meadows would have soon been alerted to this occurrence.

McWright thereafter proceeded to obtain a search warrant authorizing the search of the Meadow's residence. The warrant was issued by the General Sessions Court judge at 6:13 P.M. Before McWright could return to conduct the search, the defendant left his residence. Officers stopped the defendant and took him into custody a short distance from the residence. The officers returned with the defendant to his residence and waited for Sergeant McWright to arrive with the previously obtained search warrant.

When McWright arrived the defendant refused to open the door to his residence. The officers took his keys from the ignition of his vehicle, opened the door, and obtained entry to the residence. The search revealed two brief cases under a bed. One brief case contained papers relating to Meadows trucking company, jewelry and other miscellaneous items that did not relate to drug trafficking; and approximately $12,000, which the officers described as "drug money". The second brief case contained approximately twenty-one ounces of cocaine and other assorted drugs. In all approximately $18,000 was confiscated.

Sergeant McWright did not know who owned the real property searched. He stated he saw a quitclaim deed from Robert Meadows, the defendant, to Ann Raines, who had been in and out of the residence while it was under surveillance. Other prosecution witnesses testified the property was purchased by the defendant approximately ten years prior to his arrest, but the present title to the property was in the name of Ms. Raines.

Lisa Duke, the defendant's girl friend, was living at the residence when the search took place. Ms. Raines was apparently visiting from Florida and residing at the residence during her visit.

The defendant contends the trial court committed error requiring reversal in denying his motion to suppress the controlled substances, currency, documents, and personal effects seized under color of the search warrant in question. In support of this issue the defendant argues (a) the affidavit of Sergeant James W. McWright used to obtain the warrant was insufficient, as a matter of law, to satisfy the probable cause requirements of Article I, Section 7 of the Tennessee Constitution and the Fourth Amendment to the United States Constitution; (b) the description of the property to be seized created a general warrant, and (c) the search warrant was invalid because it was improperly executed.

We will first consider the sufficiency of the affidavit upon which the search war-

rant was issued. The judge's decision to issue the search warrant in question was predicated upon the affidavit of Sergeant James W. McWright of the Metropolitan Police Department, as follows:

#### "AFFIDAVIT OF SERGEANT JAMES W. WRIGHT

Your affiant says that the facts in support of the issuance of the search warrant are as follows:

Your affiant has been a police officer for the past 13 years employed in such capacity by the Nashville Police Department, and has acted and received the information set forth in this affidavit.

On the date of April 18, 1985, your affiant (received information from) Agent Jerry Strain, of the Tennessee Alcoholic Beverage Commission, that Robert Meadows, a M/W was in possession of a large quantity of cocaine. Agent Strain further stated that his information was that Meadows sold ounces of cocaine mainly to females. His further information stated that these females would pull up out back of the house and wait in the vehicle until given the signal to come in. Based upon the information received from Agent Strain, your affiant and Agent Strain and other vice officers established surveillance on the above described location which is the residence of Robert Meadows, and the location that Agent Strain had received the information that he was selling from. While under surveillance the above mentioned location had several vehicles arrive and leave. All individuals arriving and staying a short time were females, with the exception of Fred Bunyan, a M/W associate of Robert Meadows. At approximately 2:07 P.M., your affiant observed Janet Campbell Shearon arrive in the rear of the above described location in a 1976 Chevelle, Lic. # 2T9C56, which was listed to Josie Wilson. A further check of the vehicle showed that Alfonzo Wilson had received citations in this vehicle.

Your affiant is personally acquainted with Alfonzo Wilson and has knowledge of Wilson's past arrest and convictions for dealing in narcotics and dangerous drugs. At approximately 2:15 P.M., April 18, 1985, your affiant observed the female white come out of the back door of Robert Meadows house. She then drove to the intersection of Davidson Drive and Charlotte Pike, where she stopped and Alfonzo Wilson got in the car and started driving east bound on Charlotte. The vehicle was kept under surveillance until it attempted to get off the interstate at I–65 and Trinity Lane, at which time your affiant and other officers stopped the vehicle. When stopped both Janet Campbell Shearon and Alfonzo Wilson were found in possession of approximately two ounces of high grade cocaine. Both subjects were placed under arrest at this time.

Your affiant is familiar with Robert Meadows reputation for dealing in narcotics and dangerous drugs. He has an arrest record dating back 1962 with the Metropolitan Police Department and was arrested in January 1977 for possession of controlled substance for the purpose of resale. On May 17, 1984, a Cadillac listed to Meadow Trucking Company was abandoned at Highway 70 South and Interstate 40. A witness stated to the police at this time that a male white had jumped out of this vehicle, opened the trunk and threw a large bale of marijuana into the water. Your affiant went to this location and observed approximately 80 pounds of marijuana which had been thrown into the lake. A further examination of the vehicle revealed traces of cocaine on the floor and the seat of this vehicle. The car was towed to the Metro Impoundment Lot and approximately two hours later Robert Meadows called the police department dispatch (sic) and reported the vehicle stolen.

The two ounces of cocaine taken from Wilson and Shearon was field tested at the Vice Control Division and tested positive for cocaine. These two ounces were packaged in small plastic zip-lock containers (bags). The cocaine was further described as in rock form.

While investigating Robert Meadows, your affiant learned that on March 5, 1985, Robert Meadows rented a vehicle from the Metropolitan Airport in Nashville. This vehicle was later found in Cleveland, Tennessee in possession of Patricia Ann Green, aka Patricia Ann Davis, also aka Patricia Ann Berry a F/W, date of birth 2/18/45. This F/W was found dead after an overdose of cocaine. Found in the car was $11,000.00 in U.S. currency.

With the information received from Agent Strain, and your affiants personal observations of the events described in this affidavit, along with the other information set out in this warrant, your affiant believes Robert Meadows to be a major drug distributor in the Nashville area. Your affiant further believes that Robert Meadows is in possession of cocaine for the purpose of resale at the location described in this search warrant."

The Constitution, statutes and rules of this State certainly require a showing of probable cause as a prerequisite to the issuance of a search warrant. Tenn. Const. Article I, Section 7; T.C.A. §§ 40–6–103 through 40–6–105; Tenn.R.Crim.P. 41(c). Probable cause has been said to exist when "the facts and circumstances in a given situation are sufficient to warrant a man of reasonable caution to believe that seizable objects are located at the place to be searched." C. Whitebread and C. Slobogin, *Criminal Procedure: An Analysis of Cases and Concepts* (2nd ed. 1986) § 5.03(a) at 146. See 1 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* (2nd ed. 1987) § 3.2.

The United States Supreme Court has gone through an evolutionary process in arriving at the current tests applicable to the determination of the constitutionality of the issuance of a search warrant. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), followed by *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), held that the triggering affidavit (or where allowed, evidence presented under oath to the magistrate) had to not only state the conclusion of the affiant (and, where applicable, the informant) but had to also include facts from which the issuing magistrate could find that the conclusions were warranted. Where an informant was involved, facts had to be included from which the magistrate could reasonably conclude that the informant's information was reliable and the informant credible.

That court expressed dissatisfaction with the development of the law following these cases in deciding *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and changed the rules for testing the supporting affidavit. The court said, *inter alia:*

\* \* \* Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision. While an effort to fix some general, numerically precise degree of certainty corresponding to "probable cause" may not be helpful, it is clear that "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause".

The court went on to say:

Similarly, we have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts". *Spinelli supra,* [393 U.S.] at 419 [89 S.Ct. at 590]. "A grudging or negative attitude by reviewing courts toward warrants," [*U.S. v.*] *Ventresca,* 380 U.S. [102] at 108 [85 S.Ct. 741 at 745, 13 L.Ed.2d 684] is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner. *Id.,* at 109 [85 S.Ct. at 746].

In summary, the federal Supreme Court laid down this rule:

> * * * The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place, and the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. *Jones v. United States,* 362 U.S. [257] at 271 [80 S.Ct. 725 at 736, 4 L.Ed.2d 697].
> * * *

We hold that the affidavit in question passes Fourth Amendment muster, under *Gates.*

The next question is whether our Tennessee Constitution, Article I, Section 7, and the statute law of Tennessee, require a different result. We think not. This court has previously followed a "totality of the circumstances" approach in determining the validity of the issuance of a search warrant. *State v. Hunt,* 665 S.W.2d 751, 754 (Tenn.Crim.App.1984). We said, *inter alia:*

> * * * As to the question of the informant's reliability, the proper standard for evaluating the affidavit is found in *Illinois v. Gates,* [462] U.S. [213], 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), in which the Supreme Court abandoned the two-prong test established in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1963) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In its stead, our highest court has brought into play the "totality of the circumstances analysis".
> * * *

We, and our Supreme Court of Tennessee, have historically given Article I, Section 7 of our constitution a meaning in harmony with that given to the Fourth Amendment of the federal Constitution by the United States Supreme Court, and will not limit the state provision more stringently. *Sneed v. State,* 221 Tenn. 6, 423 S.W.2d 857 (1968).

◼ It is argued by the appellant that the affidavit does not adequately establish the fact of a *present* violation. Looking at it in total context, it presents a picture of an ongoing drug selling operation, best evidenced by the finding of cocaine in the possession of one who had just left the premises after going through an apparent customer routine. We hold that the element of present possession is sufficiently presented. See *State v. Baker,* 625 S.W.2d 724, 726 (Tenn.Crim.App.1981).

◼ The contention is also made that the search warrant constituted an unconstitutional general warrant. It authorizes the seizure of "any letters, papers, records, materials, or other property which pertain to drug sales". Given the information upon which the warrant was issued, and the crime which was thought was being committed, the warrant was not unconstitutionally general. *Andersen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). *Armstrong v. State,* 548 S.W.2d 334 (Tenn.Crim.App.1976); *Vermilye v. State,* 584 S.W.2d 226, 229–230 (Tenn.Crim.App.1979).

◼ The appellant also contends that the search warrant was unlawfully executed. The appellant was apprehended away from his residence and taken there, where he was held until the search warrant was brought to the scene. Not until then did the officers search the appellant and his residence. We find no flaw in the execution of the search warrant. We are not called upon in this case to judge the lawfulness of appellant's detention, and make no ruling on that.

◼ The remaining issue is whether or not the court erred in refusing to charge the following requested special instruction:

> In case involving possession of drugs a presumption arises that when the drugs

are found on the premises of an owner that the drugs are owned and possessed by the owner of the premises.

It is a part of appellant's theory that the house in which he was living was owned by one Ann Raines. A quitclaim deed to her was found during the search. However, Ann Raines lived in Florida and not on the premises. She was apparently visiting on the date of this search, but there is no proof that she resided upon the premises. The appellant had lived there for years.

We hold that the special request was properly refused. Even if we accept it as a correct statement of the law, despite the use of the term "presumption" rather than "inference" and its blanket application of the rule to any owner whether in possession and control or not; we hold that there is no evidence that Ann Raines had or exercised any control over the premises, so the charge was inappropriate. The inference applies only when the individual in question is in control of the premises. *Whited v. State*, 483 S.W.2d 594, 596–597 (Tenn.Crim.App.1972); *Davidson v. State*, 223 Tenn. 193, 207, 443 S.W.2d 457 (1969).

For the reasons heretofore stated, we find the issues in favor of the State and affirm the convictions.

SCOTT, P.J., and JONES, J., concur.