**STATE of Tennessee, Appellee,**

v.

**William E. TAYLOR and Rose Ann Post, Appellants.**

Court of Criminal Appeals of Tennessee, at Nashville.

June 14, 1988.

Charles R. Ray, Nashville, for appellant, William E. Taylor.

Lionell R. Barrett, Jr., Nashville, for appellant, Rose Ann Post.

Paul J. Morrow, Jr. and Kenneth J. Ries, Nashville, for amicus Committee of the Tenn. Ass'n of Criminal Defense Lawyers.

W.J. Michael Cody, Atty. Gen. and Reporter and Charles E. Bush, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

REID, Judge.

This case presents appeals by William E. Taylor and Rose Ann Post from convictions in a joint jury trial in the Criminal Court of Davidson County of possession with intent to deliver or sell more than 30 grams of a substance containing cocaine.

Taylor, Post, William J. Shaver and Martha Shaver were arrested in Posts's apartment, which was entered by authority of a search warrant, and jointly indicted. The Shavers were granted a severance and testified for the State.

Appellants attack the admissibility of incriminating evidence obtained pursuant to the search warrant and raise several procedural issues.

The record establishes that the search was valid and that the other issues do not constitute reversible error. The convictions are affirmed.

### Validity of the Search

■ The State contends that appellants "waived" appellate review of the validity of the search by failing to have the search warrant marked as an exhibit and authenticated by the trial judge. The search warrant is in the technical record and on motion to suppress was considered by the trial judge in determining the validity of the search. Appellants' motion to supplement the record pursuant to Rule 24(e), T.R.A.P. is granted.

The search warrant was issued by a general sessions court judge upon the affidavit of a Metro Police vice squad officer. A substantial portion of the information set forth in the affidavit was received from confidential informants. Appellants contend that the affidavit was not sufficient under the Fourth Amendment to the United States Constitution or Article I, Section 7 of the Tennessee Constitution.

Though myriad courts and commentators have analyzed and construed the constitutional language protecting the right of the people to be secure against unreasonable searches, rules stated with reference to the factual circumstances of one case may be of little help in other cases. However, for review of this case, the federal and Tennessee standards are sufficiently clear.

Whether the Fourth Amendment standard is a two-pronged test of knowledge and veracity [*Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)] or a totality-of-the-circumstances test [*Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)], when there is reliance upon an informant the total information presented to the magistrate, including that from and about the informant, must provide a basis on which the judicial officer reasonably may conclude that the essential facts stated are true and that they establish probable cause. Stated in the language of Article I, Section 7, there must be presented to the magistrate "evidence of the fact committed" to justify issuance of the warrant.

■ The affidavit was as follows:

Your affiant says that the facts in support of the issuance of the search warrant are as follows;

Your affiant has been a police officer for the past 9 years, employed in such capacity by the Nashville Metropolitan Police Department, and has acted and received the information set forth in this affidavit in that capacity.

On the date of October 26th, 1984, your affiant received the following information from a confidential informant. Said informant stated that W.E. "Gene" Taylor lives at 711 Elba Drive in Goodletsville, Tennessee, and drives a gray, Buick

Riviera, and has a telephone number of 859-1681. Informant states that Taylor frequents the Roadway Central on North First Street, in Nashville and has a girlfriend named Rose Anne, who's phone number is 383-6415, and she lives in apartments on Beech Avenue south of Wedgewood Avenue, in the second building in apartment "7". Informant further stated that Taylor has on prior occasions flown to Florida and bought a large quantity of cocaine which he drove back in a rental car on at least one occasion, he took the cocaine to Rose Ann's apartment on Beech Avenue for distribution. Said informant told your affiant that Gene Taylor left on Friday October 26th, 1984, and flew to Florida to buy a large quantity of cocaine. On Saturday October 27, 1984, said informant told your affiant that Gene Taylor's gray Buick Riviera was parked at the Roadway Central on North First Street and the license tag's first number is "7". Your affiant checked the telephone book and found W.E. Taylor residing at 711 Elba Drive, in Goodletsville, Tennessee and having telephone number 859-1681. Your affiant checked the criss-cross directory for 383-6415, and found it listed to a R.L. Grant living at 2020 Beech Avenue, said address being the Cabana Apartments located south of Wedgewood. Further more, Sergeant James Binkley of the Metropolitan Police Departments, Vice Control Division, told your affiant that on two separate occasions from two separate informants, one as recent as three weeks ago, Sgt. Binkley was told that a Gene Taylor is dealing cocaine in the Nashville area, that he frequents the Roadway Central on North First Street and can be reached at telephone number 383-6415. On Saturday, October 27, 1984, your affiant called 859-1681, and talked to a person who sounded like a male white in his late teens or early twenties. Your affiant asked to speak to Mr. Taylor and your affiant was told Mr. Taylor had gone to Florida. Sgt. J.D. Jones went to the Roadway Central on Saturday October 27, 1984, and found a gray Buick Riviera Tennessee license tag

7-A9D57, parked in the lot. The police computer showed this vehicle to be registered to W.E. Taylor of 711 Elba Drive, Goodletsville, Tennessee. On Sunday October 28, 1984, at approximately 11:00 A.M. and 4:00 P.M. your affiant saw this vehicle in the same place it had been on the previous day at approximately 8:30 P.M. on October 28, 1984, your affiant received a call from Sgt. J.D. Jones, stating the gray Buick was gone from the Roadway Central and was parked at the apartment complex at 2020 Beech Avenue. Your affiant went to 2020 Beech Avenue and at approximately 12:30 A.M. on Monday, October 29, 1984, your affiant was standing in the hallway of the second building coming from Wedgewood, "B" building, of the Cabana Apartments. At that time Sgt. Jones dialed 383-6415 and let it ring twice. Your affiant could hear the phone ring twice in apartment number "7". Therefore, based on all the information given to your affiant by the confidential informant, and verified by your affiant, concerning W.E. "Gene" Taylor and his activities when dealing cocaine plus the corroborating information received by Sgt. James Binkley concerning Gene Taylor's involvement in cocaine dealing, your affiant believes that W.E. "Gene" Taylor does have in his possession at 2020 Beech Avenue in apartment "B-7" a large quantity of cocaine and is seeking this search warrant to search said apartment. The name of the confidential informant has been given to the judge signing this warrant.

The propositions necessary to support a finding of probable cause were that Taylor had gone to Florida, that he had returned to Nashville with illegal drugs, and that he had delivered the drugs to Post's apartment.

The "innocent" information regarding Taylor and Post stated by the informant and verified by the affiant officer was information generally known only to persons well acquainted with Appellants. The nature and accuracy of the "innocent" information indicate that the informant likely

would know much more about Appellants than the particular facts stated. The reliability of the information was not dependent upon the identify of the informant nor the means whereby he obtained the information. A person who knows another person's name, his place of residence, his telephone number, the description and present location of his automobile, his usual haunt, his girlfriend's name, the address and location of his girlfriend's apartment, his girlfriend's telephone number and the destination of a present out-of-state trip has some means of acquiring accurate information about the other person, and reasonably would be expected to know if the other person is involved in the illegal drug business in a substantial way.

The tale told by the primary informant is intrinsically consistent with the verified "innocent" facts and with appellant's having gone to Florida to obtain illegal drugs. That Taylor had left Nashville by means other than his automobile was suggested by his vehicle remaining parked at Rodeway Central from Friday until Sunday night. Affiant's telephone conversation with the young man at Taylor's residence on Saturday established that Taylor had gone to Florida.

The information received by the affiant from his fellow vice squad officer, Sergeant Binkley, is significant. Sergeant Binkley had told the affiant officer that he had received from two separate informants information that Taylor was dealing in cocaine in the Nashville area, that he frequented Rodeway Central on North First Street and could be reached at a designated telephone number, which was Post's number at the Cabana Apartments. Again, the "innocent" information was accurate and consistent and indicated that Taylor was a drug dealer accessible by telephone at Post's apartment.

The probability of Taylor's identification as an illegal drug dealer having been contrived or mistaken is practically eliminated by the consistent statements of three apparently unrelated informants. The affiant officer and Sergeant Binkley reasonably would receive information about illegal drug traffic from confidential informants. Affiant was an experienced police officer, obviously known by the veteran magistrate who issued the warrant. Affiant's giving the primary informant's name to the magistrate supports the assertion that there was in fact an informant and lends credibility to the affidavit. Nothing in the affidavit, nor at the suppression hearing, suggested over-reaching or over-zealousness.

The presence of Taylor's automobile at Post's apartment late Sunday indicated that Taylor had returned to Nashville and was inside the apartment.

The whole account presented to the issuing judge is believable and supports the officer's sworn belief that Taylor "does have in his possession at 2020 Beech Avenue in apartment B–7 a large quantity of cocaine".

The content of the affidavit is similar to and obviously more persuasive than the affidavit in *Illinois v. Gates, supra,* and establishes probable cause under the Fourth Amendment.

Even though the standard for finding probable cause under the Tennessee constitution may be more restrictive than under the federal constitution [*State v. Lakin,* 588 S.W.2d 544 (Tenn.1979)] the affidavit in this case justifies the issuance of the warrant under Article I, Section 7. The standard required under the state constitution was stated by Justice Henry (in a dissenting opinion) to be: "Central to all these requirements is the notion that probable cause must be supported by evidence submitted to the issuing magistrate and that evidence must be sufficient to support an independent and neutral judgment that probable cause exists." *State v. Berry,* 592 S.W.2d 553, 564 (Tenn.1980). The Constitution requires "evidence of the fact", the "fact" in this case being illegal drugs in Post's apartment. "Evidence" and "proof", though often used interchangeably, are not the same. Proof is the conclusion drawn from evidence. *Black's Law Dictionary* 1380 (4th ed. 1951). "Proof is the result; evidence, the means for attaining it." 31 C.J.S., *Evidence* § 4, at 820 (1964). T.C.A. § 40–6–104 requires that

the affidavit "set forth facts *tending to establish* the grounds of the application, or probable cause for believing they exist." The affidavit contains evidence from which a cautious magistrate exercising independent and neutral judgment could find probable cause for the issuance of the warrant.

The affidavit presented to the magistrate was not insufficient as a matter of law under the Fourth Amendment or Article I, Section 7 and the search warrant was valid.

■ Appellants contend that the means whereby the location of Post's telephone within the Cabana Apartments was confirmed was a trespass, constituted an illegal search and rendered invalid the search warrant subsequently issued.

Post's apartment shared a common hallway with several other units. The doors to the hallway were not locked and entrance into the hallway was not limited or guarded. Notwithstanding the existence of a "no trespassing, no soliciting" sign at a location not visible from the usual entrance to the building in which Post's apartment was located, there is no indication that the hallway was not readily accessible to the general public, except perhaps trespassers and solicitors.

There was no justified expectation of privacy in the hallway and therefore it was not a constitutionally protected area. *U.S. v. Luschen,* 614 F.2d 1164 (8th Cir.1980); *United States v. Penco,* 612 F.2d 19 (2nd Cir.1979).

Appellants contend that the trial court erred in refusing to require the state to identify the informant and present him for *in camera* interrogation in order to attack the validity of the search warrant. The record does not disclose circumstances which would require that the identity of the informant be disclosed. There was an informant; his name was disclosed to the magistrate who issued the warrant. There is no showing that disclosure of the informant's identity would have been helpful to the defense of the appellants or was essential to a fair determination of the case. *State v. Ash,* 729 S.W.2d 275 (Tenn.Crim. App.1986), citing *Brady v. State,* 584 S.W. 2d 245 (Tenn.Crim.App.1979); *Carver v.*

*State,* 570 S.W.2d 872 (Tenn.Crim.App. 1978); *Roberts v. State,* 489 S.W.2d 263 (Tenn.Crim.App.1972); *State v. Brown,* 618 S.W.2d 325 (Tenn.Crim.App.1981); *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

### *Motion for Severance*

■ Appellant Taylor charges as reversible error the court's refusal to grant him a severance during the course of the trial. He contends that cross-examination of the affiant police officer by Post's attorney about a statement in the affidavit regarding Post's involvement in the criminal activity denied him the constitutional right of confrontation. The question was:

Q: Isn't it correct, Officer Taylor, that on December 17, of 1984, when certain discovery matters and certain statements were being taken under oath that a question was asked of you, I believe in Mr. Ray's office, as to Rose Ann Post's involvement in this. The question, "Prior to seizing that money, did you have any information that Rose Ann Post herself was actually sharing in any of the proceeds or participating in the sale of cocaine"?

The assistant district attorney objected and his objection was overruled. Post's attorney continued:

Do you recall the answer—I'll be glad to let you look at the transcript, but do you recall the answer being, "Her own involvement was that we have learned that he was using her apartment to take the drugs back to bring them up for distribution and whatever"?

A: That's an accurate statement, yes, sir.

Taylor moved the court for a severance which was denied and he then moved the court for a curative instruction which was granted.

Taylor did not object to the question. Any error was cured by the instruction. The testimony added nothing harmful to the proof in the case, which had established definitely that Taylor was using Post's apartment for the distribution of cocaine.

The assignment is without merit. *State v. Tyler*, 598 S.W.2d 798 (Tenn.Crim.App. 1980); *Post v. State*, 580 S.W.2d 801 (Tenn. Crim.App.1979); *Reece v. State*, 555 S.W.2d 733 (Tenn.Crim.App.1977).

### Motion for Mistrial

■ Appellant Taylor charges as reversible error the refusal of the court to grant him a mistrial. The basis for the claim is the response by one of the police officers to a question on direct examination by the attorney for the state:

Q: Was any other statement made?

A: Yes, sir: I then asked Shaver how he knew Gene Taylor and he told me that he had either worked with him or for him in the past. Then we got back on the seriousness of the charges that they were facing and Rose—and Martha Shaver got upset and started to cry. And William Shaver asked us if there was any way that we could keep from having to charge her. And we told him "no", that everybody was going to have to be charged. And he said, "We're not involved." He said, "The only reason we were at the apartment was that we were there to do some partying," and that they'd gotten a few grams of cocaine.

He then went on and stated that Rose Ann had told Martha, who had told him, that Rose Ann had flown to Florida and was joking about she wasn't down there but just long enough to get off the plane, eat lunch, go to a rental car agency, rent a Cadillac and drive back. And that was his impression as to how the kilo of cocaine had gotten to the apartment.

MR. RAY: I'm going to object about his impression, your Honor.

THE COURT: Sustain the objection in terms of his impression.

MR. RAY: That's improper and as—

THE COURT: I sustain the objection.

MR. RAY: I'd ask that the jury be instructed not to consider that.

THE COURT: Disregard that statement about what his impression was, members of the jury. That is correct.

Q: (By General Beveridge) He didn't tell you how the cocaine got there, did he?

A: He made that statement.

Q: Well, the Judge already told them to disregard that.

THE COURT: No, not the statement.

Q: (By General Beveridge) Did he ever tell you how the cocaine happened to be in the apartment? In of itself—that he knew for sure how the cocaine got in the—

A: He didn't say he knew for sure.

After the officer was cross-examined by Taylor's attorney and four additional witnesses testified, Taylor moved for a mistrial. Any error was cured by the instruction. There was no error affecting the result of the trial. Rule 52(a), T.R.C.P.; *State v. Tyler, supra.*

### Motion to "Investigate" Co–Defendants' Drug Usage

■ Taylor charges as error the court's denial of his motion for an "order directing the State to investigate the drug usage and alcohol usage of William J. Shaver and Martha F. Shaver that would affect their ability to recollect the events that form the basis of their testimony, or, if utilized by skillful counsel, could create a doubt as to their credibility. Defendant relies upon *State v. Brown*, 552 S.W.2d 383 (Tenn. 1977) in support of this proposition."

In *State v. Brown* the Supreme Court found that the mental condition of the prosecuting witness, who had been a patient at two state mental hospitals was an issue of "overriding" importance, the psychiatric reports were in the possession of a state agency and therefore under the "control" of the state and that "fundamental consideration of justice" under the circumstances of that case required that the records be discoverable. The trial court was ordered to conduct an *in camera* inspection of the records to determine if they had any probative value to the defendant.

The substantial differences between the *Brown* case and the case before the court are obvious. The *Brown* case involved existing records under the control of the state

within the meaning of T.C.A. § 40–2044 (now Rule 16(a)(1)(A), T.R.C.P.). That case is no authority for the proposal that the court order the State to "investigate the drug usage" of co-defendants who may testify for the State. *State v. Carter*, 682 S.W.2d 224 (Tenn.Crim.App.1984). In *State v. Workman*, 667 S.W.2d 44 (Tenn. 1984), the defendant made the less ambitious request that the State secure and deliver to him the arrest histories of the state's witnesses. The Supreme Court held that the State has no duty to provide the requested information. Denial of the motion by the trial court was proper.

All assignments of error are overruled and the convictions are affirmed.

BYERS and WADE, JJ., concur.