**Robert H. MEADOWS, Petitioner–Appellant,**

v.

**STATE of Tennessee, Respondent–Appellee.**

Supreme Court of Tennessee,
at Nashville.

Feb. 16, 1993.

Rehearing Denied March 22, 1993.

John E. Herbison, Nashville, for petitioner-appellant.

Charles W. Burson, Atty. Gen. and Reporter, Kimbra R. Spann, Asst. Atty. Gen., Nashville, for respondent-appellee.

## OPINION

ANDERSON, Justice.

We granted this case in order to decide whether a new state constitutional rule was announced in *State v. Jacumin* [1] for determining probable cause for the issuance of a search warrant. If a new rule was created, we then must determine whether it should be applied retroactively.

The trial court dismissed the petition, finding that even if we announced a new rule, it did not fit within the exceptions to the federal standard that new constitutional rules will not be applied retroactively to cases on collateral review. The Court of Criminal Appeals affirmed, but on the separate ground that the petitioner's claim had been "previously determined," and therefore did not present a cognizable claim for relief under the Post–Conviction Procedure Act. We conclude that *Jacumin* did announce a new state constitutional rule, but that the new rule does not meet our newly adopted state standard for retroactivity in claims for post-conviction relief in that it does not materially enhance the integrity and reliability of the fact finding process at trial. As a result, we affirm the lower court's dismissal of the petition.

## FACTUAL AND PROCEDURAL HISTORY

The petitioner, Robert H. Meadows, was arrested after the police conducted a search of his living quarters pursuant to a search warrant and discovered various controlled substances. Meadows filed a motion to suppress the evidence discovered during the search on the grounds that the search warrant had been issued without probable cause, which the trial court denied. Meadows was then convicted of four counts of possession of controlled substances with the intent to manufacture, deliver or sell, was fined $222,000.00, and was sentenced to an effective 44–year period of incarceration.

Meadows appealed his convictions to the Court of Criminal Appeals, contending that the affidavit used to obtain the search warrant was insufficient to satisfy the probable cause requirements of the Fourth Amendment to the U.S. Constitution, and Article I, § 7 of the Tennessee Constitution. The Court of Criminal Appeals found that the affidavit, which was, in part, based upon information obtained from a confidential informant, satisfied the "totality of the circumstances" test of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and therefore provided sufficient probable cause for the magistrate to issue the search warrant. *State v. Meadows*, 745 S.W.2d 886, 890–91 (Tenn.Crim.App.1987). In analyzing the sufficiency of the affidavit, the intermediate court concluded that, for the purposes of both federal and Tennessee law, the "totality of the circumstances" test was the appropriate standard because the U.S. Supreme Court's opinion in *Illinois v. Gates* rejected the two-prong "reliability-basis of knowledge" test previously enunciated in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). *See State v. Meadows*, 745 S.W.2d at 891.

On February 1, 1988, this Court denied Meadows application for permission to appeal without comment.

In 1989, this Court decided *State v. Jacumin, supra*, which rejected the *Gates* test and held that the proper rule under Tennessee law was the *Aguilar–Spinelli* test. Meadows then filed a petition for post-conviction relief in the trial court, alleging that the Court of Criminal Appeals incorrectly applied the *Gates* "totality of the circumstances" test to the affidavit used to obtain the 1985 search warrant. Meadows contended that *Jacumin* announced a new rule of constitutional law that should be applied retroactively to his case and if so applied, no probable cause would have existed to issue the search warrant.

1. 778 S.W.2d 430 (Tenn.1989).

The trial court dismissed Meadows' petition, finding that even if *Jacumin* had announced a new constitutional rule, the new rule did not fall within the exceptions to the federal standard adopted in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), that new constitutional rules will not be applied retroactively to cases on collateral review. Because of its finding on the retroactivity issue, the trial court found it unnecessary to make a finding on the issue of whether Meadows' claim had been "previously determined."

The Court of Criminal Appeals affirmed the trial court's dismissal of the petition, but on the grounds that the Supreme Court had "previously determined" Meadows' claim when we denied his application for permission to appeal, and that since post-conviction relief can extend only to grounds that have not been "waived" or "previously determined," *see* Tenn.Code Ann. § 40–30–111, the petition should be dismissed. The intermediate court found it unnecessary to determine whether the *Jacumin* decision was a new rule or should be applied retroactively.

### JACUMIN—OLD OR NEW CONSTITUTIONAL RULE?

■ The first issue to be determined is whether this Court's opinion in *Jacumin, supra,* announced a new constitutional rule for analyzing probable cause. In *Jacumin,* we rejected the "totality of the circumstances" test enunciated in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and held that the proper standard by which probable cause will be measured under Tennessee law is the two-pronged "reliability-basis of knowledge" test previously enunciated in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). *See Jacumin,* 778 S.W.2d at 436.

In *Aguilar v. Texas,* in order for a search warrant to be supported by probable cause when the affidavit is based upon information provided by a confidential informant, the U.S. Supreme Court stated that:

[a]lthough an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, *see Rugendorf v. United States,* 376 U.S. 528, 84 S.Ct. 825 [11 L.Ed.2d 887] was "credible" or his information "reliable."

*Aguilar,* 378 U.S. at 114, 84 S.Ct. at 1514, 12 L.Ed.2d at 729 (footnote omitted). Although the affidavit in *Aguilar* stated that the affiant had received information from a credible and reliable informant that contraband was on the premises to be searched, the Court held the affidavit insufficient because it contained nothing to demonstrate the basis of the information, i.e., whether the informant had personal knowledge, or whether he merely suspected or believed that contraband was present. *Id.* 378 U.S. at 113–15, 84 S.Ct. at 1513–14, 12 L.Ed.2d at 727–29.

In *Spinelli v. United States,* the Court granted certiorari to further explicate the principles announced in *Aguilar.* After rejecting a "totality of the circumstances" test and reaffirming the two-pronged "reliability-basis of knowledge" test, the *Spinelli* Court indicated that an affidavit could be sufficient "[i]n the absence of a statement detailing the manner in which the information was gathered [if] the tip describe[s] the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli,* 393 U.S. at 416, 89 S.Ct. at 589, 21 L.Ed.2d at 644. The affidavit in *Spinelli* was held insufficient to demonstrate probable cause because the Court found that neither the detail of the informant's tip nor the independent police investigation of the tip could support "both the

inference that the informer was generally trustworthy and that he had made his charge against Spinelli on the basis of information obtained in a reliable way." *Id.* 393 U.S. at 417, 89 S.Ct. at 589, 21 L.Ed.2d at 644.

In *Illinois v. Gates,* however, the Supreme Court abandoned the two-pronged "reliability-basis of knowledge" test of *Aguilar* and *Spinelli* for a "totality of the circumstances" approach to determine whether an informant's tip establishes probable cause for issuance of a search warrant. *Gates,* 462 U.S. at 230–33, 103 S.Ct. at 2328–29, 76 L.Ed.2d at 543–45. Under the "totality of the circumstances" approach, a magistrate does not consider the informant's "veracity" or "reliability," and "basis of knowledge" as separate and independent requirements to be exacted in each case. Instead, a magistrate considers the informant's "veracity" or "reliability" and "basis of knowledge" "as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id.* 462 U.S. at 230, 103 S.Ct. at 2328, 76 L.Ed.2d at 543.

Following *Gates* in 1983, and before our opinion in *Jacumin* in 1989, several Court of Criminal Appeals decisions applied the "totality of the circumstances" standard on the basis of language in *Sneed v. State,* 221 Tenn. 6, 423 S.W.2d 857 (1968), providing that Article I, § 7 of the Tennessee Constitution should not be construed more stringently than the Fourth Amendment to the U.S. Constitution. *See, e.g., State v. Carpenter,* 773 S.W.2d 1 (Tenn.Crim.App. 1989); *State v. McAloon,* 708 S.W.2d 427 (Tenn.Crim.App.1986); and *State v. Hunt,* 665 S.W.2d 751 (Tenn.Crim.App.1984). Included in those Court of Criminal Appeals decisions applying the "totality of the circumstances" test is the current petitioner's case on direct appeal. *See State v. Meadows,* 745 S.W.2d 886 (Tenn.Crim.App.1987).

Meadows contends that because *Jacumin* rejected the "totality of the circumstances" test, which had been followed by the Court of Criminal Appeals after the U.S. Supreme Court decided *Illinois v. Gates* in 1983, it follows that *Jacumin* announced a new constitutional rule that must be applied retrospectively to his case. While we agree with the petitioner that *Jacumin* did announce a new constitutional rule, we disagree with his contention that the rule should be applied retroactively.

"[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague v. Lane,* 489 U.S. at 301, 109 S.Ct. at 1070, 103 L.Ed.2d at 349. "To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* (emphasis in original).

Our review of the Tennessee cases decided before *Jacumin* leads us to the conclusion that *Jacumin* did create a new state constitutional rule of criminal procedure. As early as 1925, this Court held that an affidavit in support of a request for issuance of a search warrant cannot be based simply upon the conclusions of an informant, but rather must disclose the basis of the informant's knowledge. *Jackson v. State,* 153 Tenn. 431, 438, 284 S.W. 356, 358 (1925). Later, in *Owens v. State,* 217 Tenn. 544, 399 S.W.2d 507 (1965), we noted that "[t]he United States Supreme Court recognized, in the case of *Aguilar v. State of Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), that an affidavit could not be based on the mere conclusions of an informant, something the Supreme Court of Tennessee has recognized for at least forty years." *Owens,* 217 Tenn. at 553–54, 399 S.W.2d at 511. Accordingly, the "basis of knowledge" prong of the *Aguilar–Spinelli* test was part of Tennessee constitutional jurisprudence, just as it was part of federal constitutional jurisprudence.

Following our opinion in *Owens, supra,* we held that:

[s]ince guarantees of the Fourth Amendment of the Federal Constitution against unreasonable searches and seizures now apply to states through the due process clause, (*Mapp v. Ohio,* (1961), 81 S.Ct. 1684, 367 U.S. 643, 6 L.Ed.2d 1081, ...) and this is the supervening law of the land, federal cases on search and seizure

must be abided by. And as our own constitutional provision, Article I, § 7, is identical in intent and purpose with the Fourth Amendment, it is reasonable that we should not limit it more stringently than federal cases limit the Fourth Amendment, and so should regard such cases as particularly persuasive.

*Sneed v. State,* 221 Tenn. 6, 13, 423 S.W.2d 857, 860 (1968).

After *Sneed,* although this Court did diverge from federal precedent with respect to the "open fields" doctrine of search and seizure law, *see State v. Lakin,* 588 S.W.2d 544 (Tenn.1979), the courts of this state continually followed federal precedent with respect to the sufficiency of affidavits used to obtain search warrants until this Court's opinion in *State v. Jacumin,* 778 S.W.2d 430 (Tenn.1989). *See State v. Smith,* 477 S.W.2d 6 (Tenn.1972); *Earls v. State,* 496 S.W.2d 464 (Tenn.1973); *State v. Parker,* 525 S.W.2d 128 (Tenn.1975); *State v. Little,* 560 S.W.2d 403 (Tenn.1978); *Goines v. State,* 572 S.W.2d 644 (Tenn.1978); *State v. Shrum,* 643 S.W.2d 891 (Tenn.1982). This includes following the "totality of the circumstances" test of *Illinois v. Gates, supra,* from the time it was decided in 1983, until *Jacumin* was decided in 1989.

Our review demonstrates that nine Court of Criminal Appeals decisions applied the "totality of the circumstances" test to affidavits used to obtain search warrants between the time *Gates* and *Jacumin* were decided. Of these nine cases, five were not appealed to the Supreme Court and there was no Supreme Court review. *See State v. Taylor,* 763 S.W.2d 756 (Tenn.Crim.App. 1988); *State v. McAloon,* 708 S.W.2d 427 (Tenn.Crim.App.1986); *State v. George,* 706 S.W.2d 91 (Tenn.Crim.App.1985); *State v. Hawk,* 688 S.W.2d 467 (Tenn.Crim.App. 1985); and *State v. Hunt,* 665 S.W.2d 751 (Tenn.Crim.App.1984). However, four of the nine cases were appealed to this Court, and we denied each of the applications for permission to appeal. *See State v. Carpenter,* 773 S.W.2d 1 (Tenn.Crim.App. 1989); *State v. Meadows,* 745 S.W.2d 886 (Tenn.Crim.App.1987); *State v. Dowell,* 705 S.W.2d 138 (Tenn.Crim.App.1985); and *State v. Henry,* 680 S.W.2d 476 (Tenn. Crim.App.1984).

We have discussed in the past the effect of our denial of an application for appeal. Most recently we said: "This Court is not committed to all the views expressed in an opinion of the intermediate appellate courts when we deny discretionary review." *Swift v. Kirby,* 737 S.W.2d 271, 277 (Tenn. 1987). We take this opportunity to discuss some of the practical reasons for that observation. First, an intermediate appellate decision may involve any number of issues, only one of which is raised in the Rule 11 application for review by the Supreme Court. Yet, if review is denied and the opinion published, the analysis and decision on the unreviewed issues is necessarily included in the published opinion. Secondly, on occasion, the law requires modification or change and the Court is waiting for an appropriate case raising the issue ripe for change in the correct factual and legal posture. Thirdly, the sheer volume of intermediate cases reviewed by the Court (862 in 1991 and growing) is a factor as well.

However, the published opinions of the intermediate appellate courts are opinions which have precedential value and may be relied upon by the bench and bar of this state as representing the present state of the law with the same confidence and reliability as the published opinions of this Court, so long as either are not overruled or modified by subsequent decisions. To the extent that *Spalding v. Davis,* 674 S.W.2d 710 (Tenn.1984), holds otherwise, it is overruled.

In one of those cases in which we denied the application for permission to appeal, *State v. Meadows, supra,* the current petitioner's case, the Court of Criminal Appeals held

that the affidavit in question passes Fourth Amendment muster, under *Gates.*

The next question is whether our Tennessee Constitution, Article I, Section 7, and the statute law of Tennessee, require a different result. We think not. This court has previously followed a "totality of the circumstances" approach in determining the validity of the issuance of a

search warrant. *State v. Hunt*, 665 S.W.2d 751, 754 (Tenn.Crim.App.1984). *Meadows*, 745 S.W.2d at 891. The *Meadows* court also stated that "[w]e, and our Supreme Court of Tennessee, have historically given Article I, § 7 of our constitution a meaning in harmony with that given to the Fourth Amendment of the federal Constitution by the United States Supreme Court, and will not limit the state provision more stringently. *Sneed v. State*, 221 Tenn. 6, 423 S.W.2d 857 (1968)." *Id.*

In addition to the intermediate court decision in *Meadows, supra*, this Court in *State v. Bryan*, 769 S.W.2d 208 (Tenn.1989), quoted language from *Illinois v. Gates* that the

> ... task of the issuing magistrate is simply to make a practical, common sense decision, where given all the circumstances set forth in the affidavit before him including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*State v. Bryan*, 769 S.W.2d at 211 (quoting *Illinois v. Gates*, 462 U.S. at 238, 103 S.Ct. at 2332).

However, six months after our opinion in *State v. Bryan, supra*, we decided *State v. Jacumin*, where we held that "the principles developed under *Aguilar v. Texas, supra*, and *Spinelli v. United States, supra*, if not applied hypertechnically, provide a more appropriate structure for probable cause inquiries incident to the issuance of a search warrant than does *Gates*." *Jacumin*, 778 S.W.2d at 436. Therefore, this Court "adopt[ed] the two-pronged standard voiced in *Aguilar* and *Spinelli* as the standard by which probable cause will be measured to see if the issuance of a search warrant is proper under Article I, § 7 of the Tennessee Constitution." *Id.*

Accordingly, given that the courts of this state had consistently followed the federal standards as a matter of state and federal constitutional law until *Jacumin* was decided, we hold that *State v. Jacumin*, 778 S.W.2d 430 (Tenn.1989), announced a new constitutional rule for determining probable cause for the issuance of a search warrant under state law. As a result, we now turn to the issue of whether the new rule announced in *Jacumin* should be applied retroactively to the current petitioner's case.

## RETROACTIVE APPLICATION OF NEW CONSTITUTIONAL RULES

■ Prior to 1965, all new constitutional rules of criminal procedure were applied retroactively. Comment, *Griffith v. Kentucky: Partial Adoption of Justice Harlan's Retroactivity Standard*, 10 Crim. Just.J. 153, 155 (1987). It was in *Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601, 608 (1965), that the United States Supreme Court first concluded that the federal Constitution neither compels nor prohibits retroactive application of new federal constitutional rules of criminal procedure. A three-part analysis for determining retroactivity was developed, focusing on (1) the purpose to be served by the new rule, (2) the extent of reliance by law enforcement officials on the old standard, and (3) the effect of retroactive application on the administration of justice. *Id.; see also Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199, 1203 (1967). If the purpose of the new rule was to remedy a defect in the truth finding function of the trial court, retroactive application was required without regard to the other factors. *Linkletter*, 381 U.S. at 639, 85 S.Ct. at 1743, 14 L.Ed.2d at 618; *see also Ivan V. v. New York*, 407 U.S. 203, 204, 92 S.Ct. 1951, 1952, 32 L.Ed.2d 659, 667 (1972). Federal retroactivity analysis has changed substantially since the doctrine was announced in *Linkletter*. Initially, the Court distinguished between cases pending on direct review and cases on collateral review. New rules amounting to a "clear break" with past precedents were not applied to cases pending on direct review, but the retroactivity of new rules raised on collateral review was evaluated under the three-prong test. *United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). Under the most recent modifications to the federal standard of retroactivi-

ty, a new federal rule is retroactively applied to all cases, state or federal, pending on direct review or not yet final, regardless of whether the new rule constitutes a "clear break" with the past. *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). However, a new rule of federal constitutional law will not be given retroactive application to cases on collateral review unless (1) the rule places certain kinds of primary, private individual conduct beyond the power of the state to proscribe, or (2) the rule requires the observance of procedures implicit in the concept of ordered liberty. *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

Although states are bound by federal retroactivity analysis when a new federal rule is involved[2], it is well established that state courts are free to determine what retroactive effect will be accorded pronouncements of state law. *Great Northern Ry. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364–65, 53 S.Ct. 145, 148–49, 77 L.Ed. 360, 366 (1932). As Justice Cardozo explained:

> We think the Federal Constitution has no voice upon the subject. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward.

*Id.; See also American Trucking Associations, Inc. v. Smith*, 496 U.S. 167, 177, 110 S.Ct. 2323, 2330, 110 L.Ed.2d 148, 159 (1990) ("When questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions.").

Irrespective of the freedom of choice available, a number of state courts have nevertheless chosen to align with the federal courts and have assimilated the *Teague* standard into state jurisprudence. *See*

State v. Slemmer, 170 Ariz. 174, 181, 823 P.2d 41, 48 (1991); *Daniels v. State*, 561 N.E.2d 487, 489 (Ind.1990); *Commonwealth v. Bray*, 407 Mass. 296, 553 N.E.2d 538, 539 (1990); *Pailin v. Vose*, 603 A.2d 738, 741 (R.I.1992); *Matter of St. Pierre*, 118 Wash.2d 321, 823 P.2d 492, 494 (1992). Courts of other states, in an effort to dispense justice in a manner more befitting state concerns, history, and jurisprudence, have instead maintained the earlier retroactivity analysis of *Linkletter, supra,* which had been previously adopted as the state standard. *See Ex Parte Coker*, 575 So.2d 43, 52 (Ala.1990); *People v. Carrera*, 49 Cal.3d 291, 261 Cal.Rptr. 348, 777 P.2d 121, 143 (1989); *State v. Lark*, 117 N.J. 331, 567 A.2d 197, 201 (1989); *Cowell v. Leapley*, 458 N.W.2d 514, 517 (S.D.1990).

Undoubtedly, Tennessee retroactivity jurisprudence has been influenced by federal precedents. This Court, however, has never adopted the tripartite analysis that originated in the *Linkletter* decision. Instead, we have stated that newly announced state constitutional rules will be given retroactive application to cases which are still in the trial or appellate process at the time such rules are announced, unless some compelling reason exists for not so doing. *State v. Robbins*, 519 S.W.2d 799, 800 (Tenn.1975). In post-conviction proceedings, we have considered retroactive application necessary when the new state rule enhances the integrity and reliability of the fact finding process of the trial.[3] *Hellard v. State*, 629 S.W.2d 4, 5 (Tenn.1982). Stated another way, we have held retroactive application necessary when the old rule substantially impairs the truth-finding function of the trial and thereby raises serious questions about the accuracy of guilty verdicts in past trials. *Id.* at 7. After carefully considering the issue and

---

**2.** This Court applied the federal standard when deciding whether retroactively to apply *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), which held that the Eighth Amendment prohibits the imposition of a death sentence by a sentencer that has been led to believe that the responsibility for determining the appropriateness of the defendant's capital sentence rests elsewhere. *Johnson v. State*, 797 S.W.2d 578, 580 (Tenn.1990).

**3.** We determined in *Hellard* that the standard for attorney competence announced in *Baxter v. Rose*, 523 S.W.2d 930 (Tenn.1975), should be applied retroactively to claims for post-conviction relief because impairment of the fact-finding function of the trial is substantial if the defendant is denied the benefit of representation by competent counsel.

the shifting sand of federal retroactivity analysis, we conclude that the prior decisions of this Court set forth the appropriate standard for determining the retroactive effect of new state constitutional pronouncements. Accordingly, we decline to apply the federal standard of retroactivity announced in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and hold that a new state constitutional rule is to be retroactively applied to a claim for post-conviction relief if the new rule materially enhances the integrity and reliability of the fact finding process of the trial.

Applying that standard to this case, we conclude that the rule announced in *Jacumin* should not be applied retroactively because it does not materially enhance the integrity and reliability of the fact-finding process at trial. Although the new rule may enhance the probable-cause finding function of the magistrate, the old rule did not substantially impair the trial court's fact-finding function or raise serious questions about the accuracy of guilty verdicts. As stated by the California Supreme Court:

> In search and seizure cases, the tripartite test leads generally to the conclusion that a decision should not be given retroactive effect.... [I]n such a case "[e]xclusion is not necessary to ensure the reliability of the fact-finding process at trial."

*People v. Carrera,* supra, 777 P.2d at 143 (citations omitted). Although we do not adopt the tripartite test, we agree with the California Court's conclusion that the reliability of the fact-finding process at trial is not enhanced by retroactively applying the *Jacumin* rule.

We, therefore, conclude that the new rule announced in *Jacumin* should not be accorded retroactive application under the state standard of retroactivity. While it is not necessary to address the issue of whether the petitioner's claim has been previously determined, we point out that the claim was not previously determined by our denial of permission to appeal because it is not a determination on the merits. It was previously determined, if at all, by the judgment of the Court of Criminal Appeals. Accordingly, we affirm the trial court's dismissal of the petition for post-conviction relief. The costs of this appeal are taxed to the petitioner.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.