# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### JANUARY SESSION, 1999

FILED

September 2, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| MARISE E. SMITH, | ) | C.C.A. NO. 01C01-9708-CR-00342 |
| | ) | |
| Appellant, | ) | |
| | ) | |
| | ) | DAVIDSON COUNTY |
| VS. | ) | |
| | ) | HON. THOMAS H. SHRIVER |
| STATE OF TENNESSEE, | ) | JUDGE |
| | ) | |
| Appellee. | ) | (Post-Conviction Relief) |

FOR THE APPELLANT:

WESLEY MACNEIL OLIVER
Edwards, Simmons & Oliver
1501 Sixteenth Avenue South
Nashville, TN 37212

JENNIFER L. SMITH
Counsel for Appellant
222 Second Avenue North
Suite 360, Mezzanine
Nashville, TN 37201

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

KIM R. HELPER
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

VICTOR S. JOHNSON
District Attorney General

MARY HAUSMAN
Assistant District Attorney
Washington Square, Ste. 500
Nashville, TN 37201-1649

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

The petitioner, Marise E. Smith, appeals the order of the Davidson County Criminal Court denying his petition for post-conviction relief. The petitioner was convicted in 1993 of one (1) count of aggravated burglary, two (2) counts of attempted rape, one (1) count of aggravated rape and one (1) count of harassment. He received an effective sentence of thirty-nine (39) years, eleven (11) months and twenty-nine (29) days for the offenses. In 1996, the petitioner filed the present petition alleging numerous constitutional issues. After an evidentiary hearing, the trial court denied the petition. On appeal, the petitioner raises the following issues for our review:

> (1) whether the trial court erred in failing to grant the petition due to the state's failure to respond to the allegations in the petition;
>
> (2) whether the trial court erred in refusing to allow the petitioner to call an assistant district attorney as a witness at the post-conviction hearing;
>
> (3) whether double jeopardy precludes the petitioner's convictions for two (2) counts of attempted rape and one (1) count of aggravated rape;
>
> (4) whether the indictment in this case was fatally deficient for failing to allege the requisite *mens rea*;
>
> (5) whether the petitioner was denied the effective assistance of trial and appellate counsel; and
>
> (6) whether the reasonable doubt jury instruction at the petitioner's trial was unconstitutional.

After a thorough review of the record before this Court, we find no reversible error. Therefore, we affirm the judgment of the trial court.

## FACTUAL BACKGROUND

### A. Trial

The petitioner was convicted in 1993 of one (1) count of aggravated burglary, two (2) counts of attempted rape, one (1) count of aggravated rape and one (1) count of harassment. This Court affirmed the petitioner's convictions on direct appeal. State v. Smith, 891 S.W.2d 922 (Tenn. Crim. App. 1994). The Tennessee Supreme Court denied permission to appeal on October 3, 1994. To place this case in perspective we will recite the facts at trial as set out by this Court on direct appeal.

> During the early morning hours of April 9, 1992, the appellant entered the residence of the victim through a dining room window. He removed his pants in the hallway and entered the victim's bedroom. The victim was awakened when she heard the bedroom floor "creak." As she turned to look, she saw the figure of a person crouching next to her bed. The appellant immediately pinned the victim to the bed. He had a cord in his hand. The victim could not determine if the cord was made of rope or leather. The appellant attempted to penetrate the victim's vagina, but his reproductive organ was not sufficiently erect. After masturbating and obtaining an erection, he began to penetrate the victim's anus. The victim asked the appellant not to penetrate her anus. When she realized that she could not resist the appellant, and the appellant may kill her if she did not submit, the victim asked the appellant to penetrate her vagina. The appellant obliged the [victim] and engaged in vaginal intercourse with the victim.

> The victim subsequently engaged the appellant in conversation. The appellant told the victim that he had a hard time finding girlfriends. He also told her that he had taken a course in love psychology. Later, the appellant exited the residence through the open dining room window.

> A nurse practitioner examined the victim on the date in question. The findings of the nurse practitioner were consistent with vaginal penetration. A forensic analysis of the vaginal swabs prepared by the nurse practitioner and the victim's panties revealed the presence of sperm. In addition, the police found that the fingerprints lifted from the dining room window matched the appellant's fingerprints.

> The appellant made several telephone calls to the victim's residence. The numbers were recorded on a caller identification

device that the victim had installed. The appellant's voice was recorded on a tape contained in the victim's answering machine. The victim identified the voice as the person who had raped her. She stated the appellant had a Florida accent.

The telephone numbers recorded on the victim's caller identification device were listed to an automobile dealership in Franklin, Tennessee. The investigating officers took the answering machine tape to the automobile dealership where the general manager listened to the tape. The general manager identified the voice as that of the appellant, an employee of the dealership. The officers obtained a copy of the appellant's employment records. The records revealed that the appellant had resided in Florida and had taken courses in psychology.

The appellant testified that he had consensual vaginal intercourse with the victim after meeting her in a local bar. After leaving the victim's residence on the morning in question, he discovered that he had left his keys inside the [victim's] residence. When the victim did not answer the door, he went to the dining room window, stood on a gas meter, and tapped on the window. According to the appellant, the victim responded, opened the front door, and he obtained his keys. He could not explain why the victim claimed that she was raped. The appellant opined that the victim was angry because he would not spend the remainder of the night with her. He explained the telephone calls as an attempt to fulfill a promise to call the victim. When the victim did not answer the telephone, he continued to call in an effort to contact her.

State v. Smith, 891 S.W.2d at 925-26.

### B. Post-Conviction Hearing

The petitioner testified that his trial counsel was ineffective because counsel failed to object to various state witnesses' testimony and failed to investigate the crime scene thoroughly. He stated that the assistant district attorneys repeatedly committed prosecutorial misconduct by misstating the evidence in closing and rebuttal arguments. The petitioner also believed that the state committed prosecutorial misconduct when it issued a superseding indictment charging additional offenses after he refused to accept a plea bargain offered by the state. Petitioner questioned the legality of the attempt convictions

-4-

and stated that trial counsel was ineffective for failing to challenge such convictions.

Paul Newman of the Public Defender's Office represented the petitioner at trial. He had worked for the Public Defender's officer for approximately eight (8) years at the time of the petitioner's trial. Newman testified that he met with the petitioner several times prior to trial, and he and his staff conducted "extensive pretrial preparation." As part of his investigation, he went to the crime scene and made photographs of the victim's home. Although he did not take pictures of the inside of the victim's home, he did not think it was important to take such photographs. He attempted to locate potential defense witnesses and interviewed all witnesses provided by the petitioner. He could not recall whether he interviewed all of the state's witnesses.

With regard to the petitioner's assertion that his convictions for attempted rape were barred by double jeopardy, Newman testified that he and appellate counsel, Jeffrey DeVasher, researched and discussed the issue. However, he believed that the double jeopardy claim was not a viable issue to raise at the trial level or on appeal.

Newman could not specifically recall any plea bargain discussions with the state in this case, but did not believe that the superseding indictment was the result of prosecutorial vindictiveness. In addition, Newman stated that he did not view the state's closing argument as prosecutorial misconduct and, therefore, did not object.

The petitioner attempted to call Assistant District Attorney Mary Hausman as a witness to testify regarding his claims of prosecutorial misconduct. However, the trial court refused to exclude Hausman from the courtroom under the rule of sequestration because she was representing the state in the post-

conviction matter. The trial court then postponed Hausman's testimony until another attorney could be prepared to represent the state but subsequently made its ruling without Hausman's testimony.

The trial court found that trial counsel spent an "enormous amount of time on this case." The court found that Newman investigated the case and researched the issues thoroughly. The trial court noted that counsel "thought of every conceivable objection and issue that should've been taken up." Therefore, the trial court found that trial counsel met the competency standards required of criminal defense attorneys and denied the petitioner's claim of ineffective assistance of counsel. Furthermore, the trial court determined that the separate convictions for two (2) counts of attempted rape and one (1) count of aggravated rape did not violate the petitioner's double jeopardy rights, the reasonable doubt instruction charged to the jury was constitutional, and the indictments were not fatally deficient for failing to allege the requisite *mens era*. Accordingly, the trial court denied the petition for post-conviction relief. From the trial court's order, the petitioner brings this appeal.

## STANDARD OF REVIEW

In post-conviction proceedings, the petitioner bears the burden of proving the allegations raised in the petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). Moreover, the trial court's findings of fact are conclusive on appeal unless the evidence preponderates against the judgment. Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996); Campbell v. State, 904 S.W.2d 594, 595-96 (Tenn. 1995); Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993).

## STATE'S RESPONSE TO THE PETITION

In his first issue, the petitioner claims that the trial court erred in denying his petition when the state failed to respond to the petition in accordance with Tenn. Code Ann. § 40-30-208. He further argues that the state failed to make "crucial documents," i.e., the transcripts of the jury charge and closing arguments, a part of the post-conviction record, thereby rendering the trial court's determination of certain issues, as well as appellate review of those issues, impossible. Thus, he claims that the state's failure to comply with the 1995 Post-Conviction Procedure Act warrants a reversal of the trial court's judgment.

Initially, we must agree with the state that the petitioner has waived this claim for failing to object to the state's response at the post-conviction hearing. Otha Bomar v. State, C.C.A. No. 01C01-9607-CR-00325, 1997 Tenn. Crim. App. LEXIS 1104, at *2, Davidson County (Tenn. Crim. App. filed October 30, 1997, at Nashville). Furthermore, the petitioner has not demonstrated how he was prejudiced by the state's allegedly deficient responsive pleading. Id. at *2-3.

In any event, in its response to the petition for post-conviction relief, the state "denie[d] the factual allegations contained in the petition and demand[ed] strict proof thereof." The state's response also specifically addressed the petitioner's allegation concerning the language in the indictment. We hold that this response complied adequately with the requirements of Tenn. Code Ann. § 40-30-208(d).

With regard to the petitioner's assertion that the state improperly failed to make certain transcripts a part of the post-conviction record, we note that the 1995 Act does not mandate that the state file records and transcripts relevant to the proceeding, but merely states that "the district attorney general is empowered

to obtain [the records or transcripts] at the expense of the state and <u>may</u> file them with the responsive pleading or within a reasonable time thereafter." Tenn. Code Ann. § 40-30-208(b) (emphasis added); *contra* Tenn. Code Ann. § 40-30-114(b) (repealed 1995). Regardless, the record before this Court contains the transcripts of the jury instructions and closing arguments. This Court can review the substance of petitioner's claims, and his argument in this regard is, accordingly, without merit.

## ASSISTANT DISTRICT ATTORNEY AS WITNESS

In his next issue, the petitioner claims that the trial court erred in denying his request to call Assistant District Attorney Mary Hausman as a witness at the post-conviction hearing. He argues that Hausman's testimony was relevant to his claim that the superseding indictment was the result of prosecutorial vindictiveness due to his refusal to accept the state's plea bargain offer. The petitioner maintains that, in denying his request, the trial court denied him the opportunity to prove his claims by clear and convincing evidence.

The petitioner was originally indicted with one (1) count of aggravated rape with a deadly weapon, one (1) count of aggravated rape by bodily injury, one (1) count of especially aggravated burglary and one (1) count of harassment. According to the petitioner, after he refused a plea bargain offered by the state, he was re-indicted with one (1) count of aggravated burglary, one (1) count of aggravated rape, two (2) counts of attempted rape, and two (2) counts of harassment. Trial counsel could not recall the specifics of the plea bargain negotiations with the state. However, on cross-examination, the following exchange occurred:

Q          Now, the -- one of the issues that has been raised is that there was a superseding indictment, which charged Mr. Smith with additional offenses, especially the two attempted rapes and, I think, an additional count of harassment and changed the especially aggravated burglary count, which had been in the original indictment, to aggravated burglary.

Let me see if you can recall that, during our plea negotiations, I sent you a letter saying that this was the offer and that, if the offer was not acceptable, then what I was going to have to do, based on my work with the victim and talking to the victim and finding out exactly what had happened during the crime, was going to have to do a superseding indictment and charge him with two counts of attempted rape.

Do you recall, now that I've sort of refreshed --

A          I believe --

Q          -- your memory on that?

A          -- that does sound familiar to me.  I know that there wasn't any vicious thing or anything as a threat; it was more matter of fact, as I recall it.

The trial court ruled on the prosecutorial vindictiveness issue without hearing Hausman's testimony.  The court determined that the superseding indictment returned after failed plea negotiations did not constitute prosecutorial vindictiveness under Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1977).  We agree.

In Bordenkircher, the United States Supreme Court held that due process was not violated when a prosecutor re-indicted the defendant with more serious charges after the defendant refused to accept a plea bargain offer.  434 U.S. at 365, 98 S.Ct. at 669.  The petitioner's claim as alleged does not establish a denial of due process, and Hausman's testimony would not have altered the trial court's determination.

The petitioner maintains that "the record in this case fails to demonstrate that the prosecutor clearly expressed an intention to seek a superseding indictment at the time of the plea negotiations or, if so, that [petitioner] was fully informed of the terms of the offer when he made the decision to reject plea bargaining." *See* Bordenkircher, 434 U.S. at 363-65, 98 S.Ct. at 667-69. However, the record does indicate that Assistant District Attorney Hausman sent a letter to defense counsel which outlined the terms of the plea offer, as well as the consequences of the petitioner's rejection of that offer. Moreover, the petitioner is in a better position than the assistant district attorney to testify whether he was "fully informed of the terms of the offer". The trial court did not err in denying the petitioner's request to call Hausman as a witness.

This issue is without merit.

## DOUBLE JEOPARDY

The petitioner alleges that his convictions for two (2) counts of attempted rape and one (1) count of aggravated rape are violative of his constitutional right against double jeopardy. He claims that the three (3) convictions were based upon one (1) criminal intent. Therefore, he claims that he received multiple punishments for the same offense, and Counts Two and Three of the indictment charging him with attempted rape should be dismissed.

Initially, the state claims that this issue is waived for failure to assert the issue in a prior proceeding. Tenn. Code Ann. § 40-30-206(g) provides:

> A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:

(1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or

(2) The failure to present the ground was the result of state action in violation of the federal or state constitution.

Because there is no indication that the failure to present this issue was the result of state action, the petitioner's double jeopardy issue is waived unless it is based upon a new constitutional rule that requires retrospective application. In Teague v. Lane, 489 U.S. 288, 301, 109 S.Ct. 1060, 1070, 103 L.Ed.2d 334 (1989), the United States Supreme Court held that

> [A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. . . . To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final.

(Citations omitted); *see also* Meadows v. State, 849 S.W.2d 748, 751 (Tenn. 1993).

In 1996, our Supreme Court released its opinion in State v. Denton, 938 S.W.2d 373, 381 (Tenn. 1996), which held that the determination of a double jeopardy issue rests on the following: (1) an analysis of the statutory offenses; (2) an analysis of the evidence used to prove the offenses; (3) a consideration of whether there were multiple victims or discrete acts; and (4) a comparison of the purposes of the respective statutes. While relying in part on existing precedent, the Court's opinion in Denton changed prior law by requiring a more detailed analysis than simply the test announced in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). *See* State v. Black, 524 S.W.2d 913, 919 (Tenn. 1975). In other words, a double jeopardy analysis under our state constitution pursuant to Denton is more extensive than that under federal law pursuant to Blockburger.

-11-

We believe that Denton broke "new ground" under Teague and Meadows and, therefore, conclude that the rule in Denton created a new constitutional rule of law.

However, this does not end our inquiry on this point. We must now determine whether the new constitutional rule established in Denton requires retroactive application. In Meadows v. State, our Supreme Court declined to apply the federal standard for retroactivity when determining whether a new state constitutional rule of law should be applied retroactively to a claim for post-conviction relief. 849 S.W.2d at 754-55. The Court stated:

> newly announced state constitutional rules will be given retroactive application to cases which are still in the trial or appellate process at the time such rules are announced, unless some compelling reason exists for not so doing. State v. Robbins, 519 S.W.2d 799, 800 (Tenn. 1975). In post-conviction proceedings, we have considered retroactive application necessary when the new state rule enhances the integrity and reliability of the fact finding process of the trial. Hellard v. State, 629 S.W.2d 4, 5 (Tenn. 1982). Stated another way, we have held retroactive application necessary when the old rule substantially impairs the truth-finding function of the trial and thereby raises serious questions about the accuracy of guilty verdicts in past trials. Id. at 7.

Id. at 754 (footnote omitted).

Utilizing the Meadows retroactivity standard, we do not believe that the rule announced in Denton should be applied retroactively. The rule in Denton does not substantially enhance the integrity and reliability of the fact-finding process but merely refines a court's analysis for determining whether convictions arising out of one incident are permitted under state constitutional notions of what constitutes double jeopardy. Nor did the "old rule" impair the truth-finding function of the trial. The reliability of the jury's fact finding function is not enhanced by retroactively applying the rule announced in Denton. See Meadows, 849 S.W.2d at 755. Thus, we conclude that the Denton rule should not be given retroactive application.

The petitioner, therefore, is not entitled to post-conviction relief on this basis. This issue is without merit.

## SUFFICIENCY OF THE INDICTMENT

In his next issue, the petitioner contends that the indictment failed to allege the requisite *mens rea* for the offenses charged. He argues that the *mens rea* is an essential element of the charged offense. Therefore, because the indictment failed to allege an essential element of the offense, no offense has been charged, and any further proceedings are a nullity.

The petitioner was charged in a multi-count indictment with one (1) count of aggravated burglary,[1] two (2) counts of attempted rape, one (1) count of aggravated rape and two (2) counts of harassment. Counts Two and Three of the indictment alleged that the petitioner "did attempt to engage in unlawful sexual penetration of . . . [the victim], and force or coercion was used to accomplish this act in violation of Tennessee Code Annotated § 39-12-101, . . ." Count Four alleged that the petitioner "did engage in unlawful sexual penetration of [the victim] and [the petitioner] caused bodily injury to [the victim] in violation of Tennessee Code Annotated § 39-13-502, . . ." Count Six alleged that the petitioner "did place anonymous telephone calls in an offensively repetitious manner and without a legitimate purpose and by this action annoyed and alarmed the recipient, . . . in violation of Tennessee Code Annotated § 39-17-308, . . ."[2]

An indictment must "state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable

---

[1] The petitioner does not contest the validity of the aggravated burglary count.

[2] The petitioner was originally convicted on Count Five of the indictment which charged a separate count of harassment. However, at the hearing on the motion for new trial, the trial court determined that Counts Five and Six of the indictment charging harassment were multiplicitous and dismissed the petitioner's conviction in Count Five.

-13-

a person of common understanding to know what is intended." Tenn. Code Ann. § 40-13-202. "To satisfy our constitutional notice requirements, an indictment . . . must provide notice of the offense charged, an adequate basis for the entry of a proper judgment, and suitable protection against double jeopardy." State v. Trusty, 919 S.W.2d 305, 309 (Tenn. 1996). "As a general rule, it is sufficient to state the offense charged in the words of the statute, . . . or words which are equivalent to the words contained in the statute." State v. Tate, 912 S.W.2d 785, 789 (Tenn. Crim. App. 1995) (citations omitted).

In State v. Hill, 954 S.W.2d 725, 726-27 (Tenn. 1997), the Tennessee Supreme Court held that

> for offenses which neither expressly require nor plainly dispense with the requirement for a culpable mental state, an indictment which fails to allege such mental state will be sufficient to support prosecution and conviction for that offense so long as
>
> (1) the language of the indictment is sufficient to meet the constitutional requirements of notice to the accused of the charge against which the accused must defend, adequate basis for entry of a proper judgment, and protection from double jeopardy;
>
> (2) the form of the indictment meets the requirements of Tenn. Code Ann. § 40-13-202; and
>
> (3) the mental state can be logically inferred from the conduct alleged.

Subsequently, the Court extended its holding in Hill to offenses where the mental state is provided for in the statute. Ruff v. State, 978 S.W.2d 95 (Tenn. 1998). In Ruff, the Court observed, "[w]e think that the reasoning in Hill applies with even greater force here because the mental state was provided by the statute cited in the indictment, thereby placing [the defendant] on notice that knowledge is an element of the offense." Id. at 99.

We believe that the indictment in this case complied with the requirements of Hill. To begin, the indictment provided sufficient notice of the offenses for which the petitioner was being charged, as well as sufficient notice to the trial

-14-

court for the entry of a proper judgment. Secondly, the indictment was adequate to prevent a subsequent reprosecution for the same offenses. Moreover, the indictment complies with the requirements of Tenn. Code Ann. § 40-13-202 in that it "state[d] the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended." Finally, we conclude that the requisite mental states can be "logically inferred" from the conduct alleged in the counts of the indictment. As a result, the language in the indictment was legally sufficient.

This issue has no merit.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his next issue, the petitioner claims that he was denied his right to effective assistance of counsel at trial and on appeal. He argues that trial counsel was ineffective for failing to investigate the crime scene, failing to interview state witnesses, failing to object to witnesses' testimony, failing to challenge the indictment and failing to challenge his convictions for attempted rape and aggravated rape on double jeopardy grounds. He further asserts that appellate counsel was ineffective for failing to assert various issues on his direct appeal.

**A.**

The Sixth Amendment to the United States Constitution provides, in part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." Similarly, Article I, § 9 of the Tennessee Constitution guarantees an accused "the right to be heard by himself and his counsel . . ." Additionally, Tenn. Code Ann. § 40-14-102 provides, "[e]very

person accused of any crime or misdemeanor whatsoever is entitled to counsel in all matters necessary for such person's defense, as well to facts as to law."

The United States Supreme Court articulated a two-prong test for courts to employ in evaluating claims of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court began its analysis by noting that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686, 104 S.Ct. at 2064. When challenging the effective assistance of counsel in a post-conviction proceeding, the petitioner bears the burden of establishing (1) the attorney's representation was deficient; and (2) the deficient performance resulted in prejudice so as to deprive the defendant of a fair trial. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). This Court is not required to consider the two prongs of Strickland in any particular order. Harris v. State, 947 S.W.2d 156, 163 (Tenn. Crim. App. 1996). "Moreover, if the Appellant fails to establish one prong, a reviewing court need not consider the other." Id.

The test in Tennessee in determining whether counsel provided effective assistance at trial is whether counsel's performance was "within the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); *see also* Harris v. State, 947 S.W.2d at 163. In order to demonstrate that counsel was deficient, the petitioner must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 688, 104 S.Ct. at 2064; Harris v. State, 947 S.W.2d at 163.

Under the prejudice prong of Strickland, the petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. The mere failure of a particular tactic or strategy does not *per se* establish unreasonable representation. Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996). However, this Court will defer to counsel's tactical and strategic choices only where those choices are informed ones predicated upon adequate preparation. Id.; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

**B. Trial Counsel**

**(1) Failure to Investigate**

The petitioner claims that trial counsel was ineffective in failing to adequately investigate the crime scene. He argues that trial counsel should have requested access to the victim's home and photographed the interior of the house. He maintains that counsel's failure to inspect the interior of the victim's home left him unable to cross-examine the victim regarding her account of the incident.

Newman testified that he took photographs of the exterior of the victim's home, but did not attempt to enter the victim's home. He stated that he did not think photographs of the interior of the victim's home would have been significant. The trial court agreed, stating "[t]he fact Mr. Newman didn't go into the house didn't add anything to it. He had to know the State was going to

provide a layout of the house and that that would be looked into thoroughly. I don't know if he would've seen anything different, had he gone in. And I certainly wouldn't let him -- have let him take the Defendant in." Furthermore, the trial court found that trial counsel "obviously researched [the case], . . . investigated it and prepared as thoroughly as a lawyer could possibly prepare it."

Trial counsel's decision not to enter and photograph the inside of the victim's home was a tactical one, which this Court is not free to second-guess. Moreover, the petitioner has not shown how he was prejudiced by trial counsel's failure to obtain photographs of the interior of the victim's home. The mere allegation that trial counsel might have discovered evidence with which to cross-examine the victim does not establish a reasonable probability that the result of the proceeding would have been different.

This issue is without merit.

**(2) Failure to Interview State's Witnesses**

In his next allegation of ineffective assistance of counsel, the petitioner claims that trial counsel was ineffective for failing to "interview key witnesses who testified for the State despite the fact that credibility of witnesses was the most critical issue before the jury." However, this issue was not presented in the petition for post-conviction relief nor any of its subsequent amendments. Issues not raised in the post-conviction petition cannot be raised for the first time on appeal. *See* Jimmy Earl Lofton v. State, C.C.A. No. 02C01-9603-CR-00073, 1997 Tenn. Crim. App. LEXIS 219, at *2, Shelby County (Tenn. Crim. App. filed March 7, 1997, at Jackson). A post-conviction petition "must necessarily rest upon and be determined by the factual allegations it contains." Long v. State, 510 S.W.2d 83, 85 (Tenn. Crim. App. 1974). This issue is, therefore, waived.

**(3) Failure to Object**

The petitioner also claims that trial counsel was ineffective for failing to object to the testimony of various state witnesses in several respects. First, he argues that witnesses were improperly allowed to testify concerning the victim's reputation for truthfulness when her character for truthfulness had not been attacked. He further contends that a state's witness was allowed to testify concerning the workings of the victim's alarm system as well as regarding the victim's habits. Finally, the petitioner argues that several witnesses were improperly allowed to give "fresh complaint" testimony.

**a.**

With regard to the petitioner's allegations that trial counsel was ineffective for failing to object to testimony regarding the victim's credibility, the workings of the alarm system and the victim's habit, these issues were not presented in the post-conviction petition and are, accordingly, waived. *See* Jimmy Earl Lofton v. State, 1997 Tenn. Crim. App. LEXIS 219, at *2.[3]

**b.**

The petitioner further argues that trial counsel was ineffective for failing to object to "fresh complaint" testimony. He specifically refers to the testimony of Lori Gold, Susan Hackney and Chuck Flood and contends that these witnesses were improperly allowed to testify that the victim told each of them that she was raped. He asserts that this "fresh complaint" testimony was improperly admitted and, therefore, improperly bolstered the victim's credibility.

**i. Lori Gold**

Prior to trial, defense counsel stated an objection to the state's fresh complaint witnesses and requested a jury-out hearing for the trial court to determine whether such testimony was proper under the doctrine of fresh

---

[3] The petitioner acknowledges that these issues were not in the post-conviction petition but urges this Court to find "plain error" under principles of due process. This we decline to do.

complaint. Prior to Gold's testifying, the trial court conducted a jury-out hearing to determine whether her testimony qualified as "fresh complaint." The court allowed Gold to testify concerning her conversations with the victim the morning after the rape. The trial court then instructed the jury that Gold's testimony could be considered as corroboration of the victim's testimony regarding the rape.

Under the doctrine of fresh complaint, the fact that a rape victim made an immediate complaint about the rape is admissible as corroborative evidence in the prosecution's case-in chief. State v. Kendricks, 891 S.W.2d 597, 601 (Tenn. 1994). The petitioner concedes that trial counsel objected to Gold's testimony as fresh complaint, but claims that trial counsel did not object to Gold's testifying as to the details of the complaint. He asserts that the details of the complaint are inadmissible pursuant to State v. Kendricks, 891 S.W.2d at 603.

However, Kendricks was not released until one year after the petitioner's trial. At the time of trial, the details of the complaint were properly admissible. See State v. Lewis, 803 S.W.2d 260, 263 (Tenn. Crim. App. 1990) (stating that "the prosecution may prove details of the fresh complaint as a legitimate means of bolstering the victim's testimony in a sex-related offense."). Moreover, the holding in Kendricks was limited to the extent that the details of the complaint are admissible once the credibility of the victim has been attacked. Kendricks, 891 S.W.2d at 603. In this case, the victim testified previous to Gold, and the victim's credibility had been vigorously attacked through cross-examination. Therefore, trial counsel was not ineffective for failing to object to the details of the fresh complaint through the testimony of Lori Gold.

### ii. Susan Hackney and Chuck Flood

The petitioner also claims that Susan Hackney and Chuck Flood were improperly allowed to give fresh complaint testimony. However, neither Hackney nor Flood testified that the victim stated that she had been raped. The doctrine

of fresh complaint was developed in order to admit evidence which otherwise would be excluded under the hearsay rules. Fresh complaint is not implicated unless the testimony is hearsay testimony. Both testified that they had a conversation with the victim, but did not testify as to what they conversed about. This testimony does not constitute fresh complaint, and trial counsel was not ineffective for failing to object.

Both Hackney and Flood testified regarding the victim's demeanor and behavior in the days following the incident. The petitioner claims that trial counsel should have objected to this testimony as well. However, evidence regarding the victim's behavior after the incident is certainly relevant to the issue of rape versus consent. Tenn. R. Evid. 401. Such testimony is not inadmissible simply because it is unfavorable to the petitioner. This testimony was properly admissible, and trial counsel was not ineffective for failing to object.

This issue has no merit.

### (4) Failure to Secure Phone Logs

The petitioner next claims that trial counsel was ineffective for failing to review the victim's telephone logs until the morning of trial. After the victim began receiving telephone calls from the petitioner, she recorded the date and time of every incoming telephone call to her residence. The state introduced these "telephone logs" into evidence in its case-in-chief. The petitioner argues that counsel provided deficient performance by failing to review these logs until the day of trial, even though such logs were made available by the state prior to trial. However, the petitioner has not demonstrated a reasonable probability that the result of the proceeding would have been different had counsel reviewed the logs earlier. Therefore, even if counsel was deficient in failing to secure the telephone logs prior to trial, the petitioner has not demonstrated how he was prejudiced by this alleged deficiency.

This issue is without merit.

**(5) Failure to Challenge the Indictment**

The petitioner further contends that trial counsel was ineffective for failing to challenge the indictment on several grounds. First, he asserts that the indictment was deficient for failing to allege the requisite *mens rea*. Secondly, he maintains that the superseding indictment was the result of prosecutorial vindictiveness. Finally, he urges that the indictment was improper under Tenn. R. Crim. P. 8(a).

As previously stated, the indictment at issue was not deficient for failing to allege the requisite *mens rea* under State v. Hill, *supra*. Therefore, counsel's performance is not deficient for failing to object on this ground. Similarly, there is no evidence of prosecutorial vindictiveness with regard to the superseding indictment. *See* Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1977). Counsel was not ineffective for failing to challenge the indictment on this ground as well.

Tenn. R. Crim. P. 8(a) provides, in pertinent part:

> Two or more offenses shall be joined in the same indictment, presentment, or information, with each offense stated in a separate count, or consolidated pursuant to Rule 13 if the offenses are based upon the same conduct or arise from the same criminal episode and if such offenses are known to the appropriate prosecuting official at the time of the return of the indictment(s), presentment(s), or information(s) and if they are within the jurisdiction of a single court.

The Advisory Commission Comments to the rule note that it "is designed to encourage the disposition in a single trial of multiple offenses arising from the same conduct and from the same criminal episode, and should therefore promote efficiency and economy." *See also* King v. State, 717 S.W.2d 306, 307-08 (Tenn. Crim. App. 1986).

The petitioner fails to allege why the indictment was improper under Tenn. R. Crim. P. 8(a), but merely claims that such is a possibility. Regardless, Tenn.

R. Crim. P. 8(a) does not preclude the state from seeking a superseding indictment prior to a defendant's trial on the original indictment. We fail to see the impropriety in the original or superseding indictment under this rule, and trial counsel was not ineffective for failing to object to the indictment on this basis.

This issue has no merit.

### (6) Failure to Challenge Convictions Under Double Jeopardy

The petitioner argues that his convictions for aggravated rape and two (2) counts of attempted rape were improper under principles of double jeopardy; therefore, trial counsel was ineffective for failing to challenge Counts Two and Three of the indictment on double jeopardy grounds. Newman testified at the post-conviction hearing that he researched the possibility that the attempt charges would be barred under principles of double jeopardy. Furthermore, he discussed this issue with appellate counsel, Jeffrey DeVasher. Newman further testified, "it was my interpretation that, based upon the facts that these were separate acts with separate intents, separate orifices were -- were utilized, and that my understanding of the law then and my understanding of the law now is that they would constitute separate offenses."

It is undisputed that double jeopardy law under our state constitution has evolved significantly since the petitioner's trial in 1993. Our Supreme Court opinions in Phillips, Denton and Barney were not released until years after the petitioner was convicted. Trial counsel thoroughly researched the double jeopardy issue, but concluded that such was not a viable issue. Other jurisdictions adhere to the view that counsel should not be deemed ineffective for failing to assert error based upon law which is unsettled. *See* Ex parte Welch 981 S.W.2d 183, 184 (Tex. Crim. App. 1998); Nuckles v. State, 691 S.W.2d 211, 214 (Ind. Ct. App. 1998); Vaughn v. State, 931 S.W.2d 564, 567 (Tex. Crim. App. 1996); State v. Bayles, 551 N.W.2d 600, 610 (Iowa 1996); Domberg v. State, 661

So.2d 285, 287 (Fla. 1995); State v. McMahon, 519 N.W.2d 621, 628 (Wis. Ct. App. 1994). We agree with such a view. Regardless of whether these cases would stand scrutiny under Denton, we refuse to find counsel ineffective for failing to foresee changes in the law which occurred years after the petitioner's trial.

This issue has no merit.

### C. Appellate Counsel

In his next issue, the petitioner asserts that appellate counsel was ineffective for failing to assert the indictment and double jeopardy issues on appeal. He further claims that appellate counsel was ineffective for failing to contest the trial court's ruling regarding Lori Gold's fresh complaint testimony. However, the petitioner did not contest the effectiveness of appellate counsel in his petition. The failure to assert this issue in the petition becomes particularly significant in that appellate counsel did not testify at the post-conviction hearing. The petitioner recognizes this significance in his brief, stating, "the State failed to elicit testimony from appellate counsel at the post-conviction hearing, and this Court may not assume that appellate counsel considered and strategically rejected these claims." However, the state had no notice that appellate counsel's effectiveness was challenged due to the petitioner's failure to raise this issue in the post-conviction petition. Moreover, the trial court made no factual findings with regard to appellate counsel as a result of the petitioner's failure to raise the issue in the petition or at the hearing. As a result, this Court is precluded from considering this issue.

### REASONABLE DOUBT JURY INSTRUCTION

In his final issue, the petitioner contends that the "reasonable doubt" jury instruction given by the trial court was constitutionally infirm because it included

the phrase "moral certainty." He relies on <u>Rickman v. Dutton</u>, 864 F. Supp. 686, 708-09 (M.D. Tenn. 1994), for the proposition that the phrase "moral certainty" unconstitutionally lowers the state's burden of proof.

The trial court instructed the jury as follows:

Reasonable doubt is a doubt based upon reason and common sense. It is a doubt which would cause a reasonable person to hesitate to act in a reasonable matter of importance in his or her personal life. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his own affairs. A reasonable doubt is not a caprice or whim; it is not a speculation or suspicion. It is not an excuse to avoid the performance of an unpleasant duty. And, it is not sympathy.

Reasonable doubt is a high burden, but it does not mean proof to an absolute certainty. While absolute certainty of guilt is not demanded by the law to convict of any criminal charge, moral certainty is required as to every element of the offense. Your mind must rest easily as to the certainty of guilt.

In <u>Victor v. Nebraska</u>, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), the United States Supreme Court expressed criticism of the continued use of the "moral certainty" phrase. However, the Court did not actually hold that it was constitutionally invalid. Instead, the Court looked to the full jury charge to determine if the phrase was placed in such a context that a jury would understand that it meant certainty with respect to human affairs. 511 U.S. at 13-17, 114 S.Ct. at 1247-48. In particular, the Court was concerned with the terms "grave uncertainty" and "actual substantial doubt." <u>Cage v. Louisiana</u>, 498 U.S. 39, 41, 111 S.Ct. 328, 329-30, 112 L.Ed.2d 339 (1990).

Although the phrase "moral certainty" was included in the "reasonable doubt" jury instruction, the terms of particular concern to the United States Supreme Court were not included in the charge. This Court has consistently upheld similar instructions as congruous with constitutional principles. <u>Pettyjohn v. State</u>, 885 S.W.2d 364, 365-66 (Tenn. Crim. App. 1994); <u>State v. Hallock</u>, 875

S.W.2d 285, 294 (Tenn. Crim. App. 1993). Moreover, our Supreme Court has held that "the use of the phrase 'moral certainty' by itself is insufficient to invalidate an instruction on the meaning of reasonable doubt." State v. Nichols, 877 S.W.2d 722, 734 (Tenn. 1994), *cert. denied*, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995). The charge given by the trial court, although containing the phrase "moral certainty," was constitutionally valid.

This issue is without merit.

## **CONCLUSION**

After thoroughly reviewing the record before this Court, we conclude that the trial court properly denied the petition for post-conviction relief. Accordingly, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

CONCUR:


_____
JOHN H. PEAY, JUDGE


_____
THOMAS T. WOODALL, JUDGE