IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 16, 2016

**STATE OF TENNESSEE v. RONALD TURNER**

**Appeal from the Criminal Court for Knox County**
**No. 105636   Steven Wayne Sword, Judge**

———————————————————

**No. E2016-00790-CCA-R3-CD**

———————————————————

Defendant, Ronald Turner, appeals his convictions stemming from various drug and firearm offenses. He challenges the sufficiency of the evidence and argues that the criminal gang enhancement of some of his offenses pursuant to Tennessee Code Annotated section 40-35-121(b) was unconstitutional in light of *State v. Bonds*, 502 S.W.3d 118 (Tenn. Crim. App. 2016). Upon review, we determine that the evidence is sufficient to support Defendant's convictions. However, because Defendant is entitled to retroactive application of the holding in *Bonds*, we vacate the sentences of the underlying convictions to which the enhancement was applied and remand those convictions for resentencing. Additionally, we conclude that the trial court committed plain error by improperly applying the Drug-Free School Zone Act and remand for resentencing on this basis. We also remand for correction of clerical errors.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Reversed in Part, Affirmed in Part, and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

J. Liddell Kirk (on appeal) and Michael A. Graves (at trial), Knoxville, Tennessee, for the appellant, Ronald Turner.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General, Senior Counsel; Charme P. Allen, District Attorney General; and TaKisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Procedural History and Factual Summary*

Defendant was indicted with one count of possession with intent to deliver more than .5 grams of cocaine within a drug-free zone (DFZ), one count of possession with intent to sell more than .5 grams of cocaine within a DFZ, two counts of possession of a firearm during the commission of a dangerous felony, one count of theft of property valued over $500, and one count of unlawful possession of a weapon. The indictment also included three separate counts for the criminal gang enhancement based on both drug charges and the unlawful possession of a weapon charge. Defendant proceeded to a bifurcated trial, during which the following facts were adduced.

Officer Thomas Turner of the Knoxville Police Department testified that, on January 3, 2015, he observed a silver Ford Crown Victoria turning onto Fern Street. Officer Turner began following the vehicle and observed it reach a speed of forty miles per hour on two different occasions while driving on streets with a speed limit of twenty-five miles per hour. Officer Turner initiated a traffic stop and approached the driver of the vehicle.

The driver of the vehicle produced his driver's license. Officer Turner explained the reason for stopping the vehicle and requested that the driver roll down the rear windows of the car because they were darkly tinted. The driver complied with this request, which revealed Defendant sitting in the driver's side back seat. Officer Turner opened the door and asked Defendant to exit the vehicle. Defendant complied. Officer Turner then placed Defendant's hands behind his back and applied handcuffs.[1] Officer Turner's backup, Officer Pickens,[2] observed the handle of a firearm protruding from the waistband of Defendant's pants, and he confiscated the firearm, which was a Kel-Tec nine-millimeter semiautomatic handgun. The firearm was loaded with fourteen rounds in the magazine and one round in the chamber.

As Officer Turner prepared to put Defendant in the back of his patrol car, Officer Turner searched Defendant's person, discovering a cigarette pack in the right pocket of Defendant's pants. The cigarette pack contained several cigarettes and "two separate, small clear plastic baggies" containing numerous small rocks of crack cocaine. Officer Turner's portable field scale weighed one of the baggies at 1.5 grams and the other at 1.0 grams.

---

[1] Although no evidence was presented regarding the basis for Defendant's initial arrest, in oral argument, the prosecutor indicated that Officer Turner was aware of outstanding warrants for Defendant's arrest. Defendant does not challenge his initial arrest.

[2] Officer Pickens's first name is not in the record.

Based on Officer Turner's training and experience, the amount of cocaine in the baggies exceeded the amount typically carried by a drug user and was consistent with the amounts carried for sale by drug dealers. Defendant's possession of a firearm and lack of possession of drug paraphernalia were also indicative of Defendant's possession of the cocaine with the intent to sell rather than for personal consumption. Officer Terry Pate of the Knoxville Police Department, who was certified by the trial court as an expert in narcotics investigations without objection, also testified that, based on his training and experience, the nature and amount of cocaine in Defendant's possession, in addition to Defendant's possession of a firearm but no possession of drug paraphernalia, indicated that Defendant intended to sell the cocaine.

Special Agent Mollie Stanfill, a forensic scientist for the Tennessee Bureau of Investigation, performed a chemical analysis on the substance in the plastic baggies and confirmed the presence of .87 grams of cocaine base. Lisa Knight of the Tennessee Department of Safety and Homeland Security testified that Defendant had never applied for or been issued a handgun carry permit.

Officer Turner confirmed that the route taken by the Crown Victoria along Fern Street passed in front of Fair Garden Preschool. Donna Roach, office manager and administrative technician for KUB Geographic Information Systems, confirmed that a computer model calculated the location indicated by Officer Turner to be within 1000 feet of Fair Garden Preschool.

Defendant testified that his brother had been murdered the night before he was arrested. Prior to the arrest, Defendant was at his cousin's house. Someone who was with Defendant's brother when he was killed gave Defendant his brother's belongings, which included the handgun. Several packs of cigarettes were on top of a coffee table. Before leaving his cousin's house, Defendant walked over to the table and picked up a pack of Newport cigarettes. Defendant shook the pack and took it with him because it "felt the fullest."

Defendant left his cousin's house with some people to go to the store to get a drink. On the way, Defendant pulled a cigarette from the pack, and one of the bags of cocaine fell out. Defendant then asked the driver to take him back to his cousin's house because he "didn't want to have somebody else's belongings." On the way back, they passed Officer Turner, with whom Defendant was previously familiar, and Officer Turner stopped the vehicle.

Defendant testified that he knew he had the gun in his possession, but he did not know that the cocaine was in the pack of cigarettes. Because Defendant did not know that there were drugs in the pack of cigarettes, Defendant was unaware that he was

possessing drugs in a DFZ. Defendant took the gun with him because one of the rules of his cousin's house was "no guns."

Defendant was convicted as charged on all of the underlying offenses, except for the charge of theft, of which Defendant was acquitted.[3] After the jury returned verdicts on the underlying offenses, the court then proceeded to the second phase of the bifurcated trial on the criminal gang enhancement charges. The State presented proof that Defendant was a member of a criminal street gang known as the Vice Lords. After hearing all of the proof, Defendant was convicted of the criminal gang enhancements for all three of the underlying offenses.

After a sentencing hearing, Defendant received an effective sentence of nineteen years. The trial court sentenced Defendant to fifteen years for possession of cocaine with intent to deliver and merged into it the conviction for possession of cocaine with intent to sell. The trial court sentenced Defendant to four years for possession of a firearm during the commission of a dangerous felony and merged into it the other conviction for the same offense. Pursuant to statute, the sentence for possession of a firearm during the commission of a dangerous felony was mandatorily consecutive to the sentence for possession of cocaine with intent to deliver. The trial court sentenced Defendant to one year for the unlawful possession of a firearm conviction and ran it concurrently with the sentence for possession with intent to deliver.

After the sentencing hearing, the trial court entered the judgments for the substantive offenses on January 12, 2016, and the judgments were filed on January 13, 2016. Defendant filed a motion for new trial on February 16, 2016. The trial court held a hearing on the motion for new trial on March 3, 2016, and denied the motion. The written order denying the motion was entered the following day. Defendant filed a notice of appeal on March 31, 2016.

*Analysis*

Defendant argues that the evidence was insufficient to support his convictions for possession of a controlled substance with intent to sell or deliver[4] and that his criminal gang enhancements are unconstitutional. The State argues that Defendant's notice of appeal was untimely and that there was sufficient evidence to support his convictions. The State further argues that Defendant has waived his challenge to the criminal gang enhancements by failing to raise a pre-trial challenge to the constitutionality of the

---

[3] Given Defendant's acquittal of that charge, we have omitted from this opinion the facts relevant to that charge.

[4] Defendant does not challenge the sufficiency of the evidence for his other convictions.

criminal gang enhancement statute and by failing to properly present that issue for appellate consideration in a timely filed motion for new trial.

## A. Sufficiency of the Evidence

As an initial matter, we must determine whether Defendant has waived his challenge to the sufficiency of the evidence by filing an untimely notice of appeal. Tennessee Rule of Appellate Procedure 4(a) requires that a notice of appeal be filed within thirty days after the date of entry of the judgment. In the event of a timely motion for new trial, Tennessee Rule of Appellate Procedure 4(c) authorizes the filing of a notice of appeal within thirty days of the entry of the order denying the motion.

Here, the notice of appeal was filed within thirty days of the entry of the order denying the motion for new trial. Normally, this would render the notice of appeal timely, but in this case, the motion for new trial was not timely. Tennessee Rule of Criminal Procedure 33(b) requires that a motion for new trial be filed "within thirty days of the date the order of sentence is entered." Where a motion for new trial is not filed within the prescribed thirty-day time period, the judgment becomes final, and the trial court loses jurisdiction to consider a subsequent late-filed motion for new trial. *State v. Lowe-Kelley*, 380 S.W.3d 30, 34 (Tenn. 2012). Because Defendant's motion for new trial was not timely filed, it was a nullity, *State v. Boxley*, 76 S.W.3d 381, 389 (Tenn. Crim. App. 2001), thereby rendering the notice of appeal also untimely because it was not filed within thirty days of entry of the judgments.

However, "in all criminal cases, the 'notice of appeal' document is not jurisdictional, and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). "In determining whether waiver is appropriate, this [C]ourt will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case." *State v. Rockwell*, 280 S.W.3d 212, 214 (internal quotation omitted). Under the circumstances of this case, we choose to waive the requirement of a timely filing of the notice of appeal and proceed to consider whether there was sufficient evidence to support Defendant's convictions for possession of cocaine with intent to sell or deliver.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e);

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

"It is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to . . . deliver or sell the controlled substance." T.C.A. § 39-17-417(a)(4). Cocaine is a Schedule II controlled substance. T.C.A. § 39-17-408(b)(4). When the foregoing offense is committed within 1000 feet of a preschool, it "shall be punished one classification higher," T.C.A. § 39-17-432(b)(1), and the offender "shall be required to serve at least the minimum sentence for the defendant's appropriate range of sentence," T.C.A. § 39-17-432(c). However, a violation "within the prohibited zone of a preschool . . . shall not be subject to additional incarceration . . . but shall be subject to the additional fines imposed by this section." T.C.A. § 39-17-432(b)(3).

Defendant argues that the evidence presented at trial established that he neither knowingly possessed the cocaine nor intended to deliver or sell it. Defendant further argues that the evidence is insufficient to prove that he knew he was in a DFZ while committing the offenses. We disagree. Defendant's argument is predicated upon his testimony at trial that he did not know the cocaine was inside the pack of cigarettes when he left his cousin's house and that, after discovering the cocaine, he was en route to return it at the time he was arrested. However, the jury was free to reject Defendant's testimony, and here, they did so. On appeal, we consider all of the evidence in the light most favorable to the State.

The State's evidence established that Officer Turner, during a search incident to arrest, discovered a pack of cigarettes containing over .5 grams of crack cocaine in the pocket of Defendant's pants. Officers Turner and Pate testified that, based on their training and experience, Defendant's possession of the cocaine was inconsistent with the usual practices of an ordinary drug user and more consistent with the practices of a drug dealer. The officers reached this conclusion because: (1) the amount of cocaine was larger than that usually possessed at one time by a drug user; (2) the cocaine was

packaged in a manner convenient for sale and distribution—small, individual rocks wrapped in plastic baggies; (3) there was no drug paraphernalia to facilitate consumption of the cocaine; and (4) Defendant was also carrying a handgun. This evidence is sufficient for a rational jury to find beyond a reasonable doubt that Defendant knowingly possessed the cocaine and intended to either deliver or sell it.

Similarly, the State's evidence showed that Defendant passed within 1000 feet of a preschool while in possession of the cocaine. Whether Defendant was aware that he was committing the drug offense while in this proximity to the preschool is immaterial because the DFZ enhancement does not contain a mens rea element. The State does not have to prove that Defendant knew that he was committing an offense within 1000 feet of a preschool. *State v. Smith*, 48 S.W.3d 159, 167 (Tenn. Crim. App. 2000). Accordingly, Defendant is not entitled to relief on this issue.

## B. Criminal Gang Enhancement

Defendant argues that the criminal gang enhancement applied to some of his convictions pursuant to Tennessee Code Annotated section 40-35-121 should be vacated in light of this Court's decision in *State v. Bonds*, 502 S.W.3d 118 (Tenn. Crim. App. 2016), holding that portions of the criminal gang enhancement scheme are facially unconstitutional. The State argues that Defendant has waived this issue by failing to raise it before trial and by failing to file a timely motion for new trial.

At the time of the offenses, Tennessee Code Annotated section 40-35-121(b) provided: "A criminal gang offense committed by a defendant who was a criminal gang member at the time of the offense shall be punished one (1) classification higher than the classification established by the specific statute creating the offense committed."[5] Possession of a controlled substance with intent to sell or deliver was an enumerated criminal gang offense, T.C.A. § 40-35-121(a)(3)(B)(xxv), as was unlawful possession of a weapon, T.C.A. § 40-35-121(a)(3)(B)(xxvi). Defendant's indictment charged criminal gang enhancement for both of the drug offenses as well as the unlawful possession of a firearm charge.

During the second phase of the bifurcated trial, the jury made the requisite factual findings and applied the criminal gang enhancements as charged. As a result, Defendant's Class B felony convictions for possession of cocaine with intent to sell or deliver were classified as Class A felonies[6] while his Class A misdemeanor conviction for unlawful possession of a firearm was classified as a Class E felony.

---

[5] After *Bonds* was filed, the General Assembly amended Section 40-35-121(b).

[6] These convictions were also enhanced to Class A felonies pursuant to the Drug-Free School Zone Act. *See* T.C.A. § 39-17-432(b).

As stated above, the judgments were entered on January 12, 2016, but Defendant did not file a motion for new trial until February 16, 2016. The motion for new trial alleged: "Defendant challenges the validity of the gang enhancement statute; other challenges of validity in other defendant[s'] cases are still pending on appeal." That was the first time Defendant posed any question as to the validity of the criminal gang enhancement statute. Defendant filed a notice of appeal on March 31, 2016, and on April 7, 2016, this Court filed its opinion in *Bonds*, holding that the criminal gang enhancement statute violated constitutional substantive due process protections because it lacked a requirement that there be a nexus between the underlying criminal offense and a defendant's affiliation with a criminal gang. 502 S.W.3d at 157. Thus, this case was in the pipeline when *Bonds* was decided.

Defendant contends that he should benefit from the ruling in *Bonds*. The State argues that Defendant waived the issue of the validity of his criminal gang enhancement because he did not file a pre-trial motion challenging the constitutionality of the statute and also because he failed to raise the issue in a timely motion for new trial. We agree with the State that Defendant was required to challenge the constitutionality of the criminal gang enhancement statute prior to trial through a motion to dismiss in order to have properly preserved this issue for appeal. *See State v. William Jermaine Stripling*, No. E2015-01554-CCA-R3-CD, 2016 WL 3462134, at *5 (Tenn. Crim. App. June 16, 2016) (citing *State v. Rhoden*, 739 S.W.2d 6, 10 (Tenn. Crim. App. 1987)) (considering whether a defendant's failure to raise a constitutional challenge to the criminal gang enhancement statute before trial resulted in waiver of the issue and citing cases), *no perm. app. filed*.[7] However, as a general rule, appellate court decisions involving the constitutionality of criminal rules and procedures are given limited retroactive application to cases already in the appellate process. *Meadows v. State*, 849 S.W.2d 748, 754 (Tenn. 1993) (citing *State v. Robbins*, 519 S.W.2d 799, 800 (Tenn. 1975)), *overruled on other grounds by Bush v. State*, 428 S.W.3d 1 (Tenn. 2014).[8] Obviously, the scope of that rule includes cases such as this one that are pending review on direct appeal. *See, e.g., State v. Cecil*, 409 S.W.3d 599, 608 (Tenn. 2013).

---

[7] In *William Jermaine Stripling*, the court noted sua sponte that the appellant had failed to raise his constitutional challenge prior to trial but chose not to deem the issue waived because the State had not argued that it should be waived. 2016 WL 3462134, at *5. Because our decision in *Bonds* had not yet been published, the court then went on to engage in an independent consideration of the constitutionality of the criminal gang enhancement statute and likewise concluded that it violated the protections of substantive due process. *Id.* at *7-8. Accordingly, the court was not presented with the issue of retroactive application of *Bonds*.

[8] A different retroactivity analysis applies to cases in which the judgments have already become final and a defendant raises a collateral challenge. *See generally Bush*, 428 S.W.3d 1.

Previously, our supreme court has required an issue to be properly preserved at trial and presented on appeal to receive the benefit of a recently-decided appellate court ruling. *State v. Gomez* ("*Gomez I*"), 163 S.W.3d 632, 644 n.9 (Tenn. 2005) (noting that "this Court has regularly limited retroactive application of new rules to only those cases pending on direct review in which the issue has been timely raised and properly preserved" (citations omitted)), *vacated on other grounds*, 549 U.S. 1190 (2007).[9] However, language in the supreme court's most recent decision on this topic casts doubt onto the rule as stated in *Gomez I*. In *Cecil*, the court addressed the retroactive application of its decision in *State v. White*, 362 S.W.3d 559 (Tenn. 2012), to cases in the appellate process. 409 S.W.3d at 608. Without much ado, the court concluded, "Because this case was on direct appeal at the time *White* was decided, the issue has been preserved, and the Defendant is entitled to the benefit of our ruling." *Id.* (citing *Lease v. Tipton*, 722 S.W.2d 379, 379 (Tenn. 1986) (per curiam)). As can be seen, the court's language suggests that a case merely being in the appellate process at the time a new rule is announced is sufficient to preserve an issue regardless of whether the issue was properly raised in the trial court.[10]

This Court has recently addressed the issue of retroactive application of *Bonds* in two cases. In *State v. Christopher Minor*, No. W2016-00348-CCA-R3-CD, 2017 WL 634781, at *8 (Tenn. Crim. App. Feb. 16, 2017), the majority determined that the issue was waived because it was raised for the first time on appeal. The majority then concluded that plain error relief was not warranted because a clear and unequivocal rule of law was not breached as our opinion in *Bonds* was not filed until after the appellant

---

[9] *Gomez I* was summarily vacated and remanded by the Supreme Court for further consideration in light of new federal authority. *See Gomez v. Tennessee*, 549 U.S. 1190 (2007). On remand, our supreme court signaled some doubt as to the continuing authority of *Gomez I*'s retroactivity holding when it failed to affirm without reservation that aspect of *Gomez I* when presented with an opportunity to do so:

> Defendant Gomez and amicus curiae argue that plain error review is unnecessary and that we should grant plenary appellate review of the Defendants' Sixth Amendment claims. Because we have determined that the Defendants are entitled to relief for plain error, we decline to readdress whether the Defendants properly preserved their Sixth Amendment claim for plenary review. Accordingly, consistent with our initial holding in *Gomez I*, we will apply plain error review to our reconsideration of the Defendants' sentencing claims.

*State v. Gomez* ("*Gomez II*"), 239 S.W.3d 733, 737 (Tenn. 2007).

[10] Although these opinions appear to be inconsistent, we note that it is possible that *Cecil* actually engaged in a straightforward application of the rule in *Gomez I* because it is unclear whether the issue was properly preserved in the trial court. *See Cecil*, 409 S.W.3d at 604 n.5 (noting that the defendant raised the issue of "whether the evidence was sufficient to support his convictions of simple assault and false imprisonment" in his motion for new trial); *State v. Cecil*, No. M2011-01210-CCA-R3-CD, 2012 WL 2674521, at *5 n.2 (Tenn. Crim. App. July 6, 2012) (noting that the defendant's sufficiency of the evidence challenge was predicated upon authority overruled by *White*), *rev'd*, 409 S.W.3d 599.

was sentenced. *Id.* at *9 (citing *Gomez I*, 163 S.W.3d at 648). One member of the panel dissented, arguing that retroactive application of *Bonds* was required, despite the appellant's failure to properly raise the issue to the trial court, based upon *Meadows*, 849 S.W.2d at 754 (stating that "newly announced state constitutional rules will be given retroactive application to cases which are still in the trial or appellate process at the time such rules are announced, unless some compelling reason exists for not so doing"), and *Teague v. Lane*, 489 U.S. 288, 304 (1989) (stating that "the integrity of judicial review 'requires the application of the new rule to all similar cases pending on direct review'" (quoting *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987))). *Christopher Minor*, 2017 WL 634781, at *9-10 (McMullen, J., dissenting). The dissent did not address our supreme court's retroactivity analysis in *Gomez I* but pointed to *Cecil* as support for blanket application of *Bonds* to all cases in the appellate process. *Id.* at *11. In *State v. Gerald Lamont Byars*, No. W2016-00005-CCA-R3-CD, 2017 WL 758517, at *15-17 (Tenn. Crim. App. Feb. 27, 2017), the panel concluded that application of *Bonds* was warranted under *Cecil*'s "pipeline approach" or, alternatively, under the plain error doctrine.

Candidly, we are uncertain about the state of the controlling law at this point. *Cecil* is the most recent word from our supreme court on this subject, but it seems uncharacteristic that the court would have intentionally chosen a tacit departure from its exhaustive opinion in *Gomez I* without an explanation for the change of course. Nonetheless, we agree with the sentiment expressed by the dissent in *Christopher Minor* that it seems "nonsensical" not to apply *Bonds* retroactively to all cases pending on appeal, 2017 WL 634781, at *11, and we choose to follow the plenary review approach of *Cecil*.[11] *See also Gerald Lamont Byars*, 2017 WL 758517, at *17 (stating that, even without retroactive application of *Bonds*, "we fail to see how we would be constrained to uphold a statute that was 'so obviously unconstitutional on its face as to obviate the necessity for any discussion.'" (quoting *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983))). Accordingly, Defendant is entitled to the benefit of our ruling in *Bonds* because his case was pending on direct appeal at the time *Bonds* was decided.[12] As such,

---

[11] We note that it would be particularly confounding not to apply plenary review to all cases in the appellate pipeline given this Court's recent decision in *Ronnie Lamont Harshaw v. State*, No. E2015-00900-CCA-R3-PC, 2017 WL 1103048, at *12 (Tenn. Crim. App. Mar. 24, 2017), that *Bonds* is also retroactively applicable to cases through collateral attack.

[12] Although the dissent in *Christopher Minor* points out that our supreme court in *Meadows* did "not explicitly reject[] the analysis in *Teague* for cases on direct review," 2017 WL 63478, at *9 (citing *Meadows*, 849 S.W.2d at 755), we think it worth mention that *Teague*'s analysis for cases on direct review was based upon *Griffith*, *see Teague*, 489 U.S. at 304-05 (quoting *Griffith*, 479 U.S. at 322-24, 328), and in *Gomez I*, our supreme court provided the following explanation of *Griffith*:

> Having thus reviewed its factual and procedural background, we conclude that *Griffith* does not mandate plenary retroactive application of new rules to pending direct review cases without regard to whether the claim of error has been properly preserved. Instead,

- 10 -

the untimeliness of Defendant's motion for new trial is immaterial because he was neither required to properly raise this issue nor properly present it on appeal.

Defendant challenges the validity of his criminal gang enhancement pursuant to Tennessee Code Annotated section 40-35-121(b). As stated above, in *Bonds*, we held that Section 40-35-121(b) was facially unconstitutional because it violated principles of substantive due process. 502 S.W.3d at 157-58. Because three of Defendant's convictions were enhanced pursuant to an unconstitutional statute, he is entitled to relief. Therefore, the criminal gang enhancement applied to Defendant's convictions of possession of cocaine with intent to sell or deliver and his conviction of unlawful possession of a weapon are vacated, and the case is remanded for new sentencing on those convictions in accordance with this opinion.

Furthermore, we note that the outcome would be the same even if we were to follow the plain error approach of *Gomez I*. When a defendant fails to properly preserve and present an issue, this Court may review the issue for plain error. Tenn. R. App. P. 36(b) ("When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."); *State v. Gomez* ("*Gomez II*"), 239 S.W.3d 733, 737 (Tenn. 2007); *Gomez I*, 163 S.W.3d at 645, 651; *see also Gerald Lamont Byars*, 2017 WL 758517, at *15; *Christopher Minor*, 2017 WL 634781, at *8. Plain error relief is available only if the defendant satisfies all five requirements:

> (1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is "necessary to do substantial justice."

*Gomez II*, 239 S.W.3d at 737 (internal quotation omitted).

---

*Griffith* simply overruled precedent which had precluded retroactive application of new rules to pending direct review cases. Where, as here, a new rule is announced while a criminal case is pending on direct review, *Griffith* mandates plenary application of the new rule only if the issue to which the new rule relates has been timely raised and properly preserved. A criminal defendant who has failed to properly preserve the relevant issue is limited to seeking relief via plain error review.

163 S.W.3d at 644-45 (footnote omitted). Thus, it appears that neither *Teague* nor *Griffith* is controlling on this issue, and we base our decision on *Cecil*.

All five requirements for plain error relief are satisfied in this case. First, the record clearly establishes that Defendant was convicted of two counts of possession of a controlled substance with intent to sell or deliver and one count of unlawful possession of a firearm. The record also clearly establishes that all three of these convictions were enhanced pursuant to Section 40-35-121(b).

As to the second requirement, "[w]hether an error is 'plain' or 'obvious' is determined by reference to the law existing as of the time of appellate consideration." *Gomez I*, 163 S.W.3d at 646, 653-54 (citing *Johnson v. United States*, 520 U.S. 461, 468 (1997)). Thus, even though neither the trial court nor the parties had the guidance of our decision in *Bonds*, we are bound by that published decision in this direct appeal.[13] Accordingly, Defendant's criminal gang enhancement under Section 40-35-121(b) violates a clear and unequivocal rule of law as pronounced in *Bonds*, which held that Section 40-35-121(b) is facially unconstitutional under the Due Process Clause of the Fourteenth Amendment. 502 S.W.3d at 157-58. Similarly, a substantial right of the accused was adversely affected when three of Defendant's convictions were enhanced by an unconstitutional statute in violation of the requirements of substantive due process.

As to the fourth requirement, it seems beyond question that Defendant did not waive this issue for tactical reasons because there is no conceivable benefit from not doing so. Lastly, we conclude that relief is necessary to do substantial justice under the facts of this case. As Defendant points out in his appellate brief, the facts of this case stand in stark contrast to those presented in *Bonds*. The underlying criminal activity in *Bonds* was a gang "beating out" that nearly killed the victim. Unfortunately, the criminal gang enhancements of the defendants in *Bonds* were invalidated despite the glaring fact that the underlying offenses in that case were perpetrated during the furtherance of criminal gang activity. *See Bonds*, 502 S.W.3d at 161. Such were the facts in *Christopher Minor* as well were one victim was murdered and another beaten so a gang member could "prove himself to the gang." 2017 WL 634781, at *1. Here, however, as in *William Jermaine Stripling* and *Gerald Lamont Byars*, no evidence was presented that the underlying criminal offenses were perpetrated in connection with Defendant's gang affiliation. While this Court has no desire to propagate undue leniency for criminal gang activity, the facts presented in this case reveal one of the primary flaws posed by a criminal gang enhancement statute that lacks a requirement of a nexus between the underlying criminal offense and the defendant's gang affiliation—an offender's punishment is increased based on his connection to other individuals rather than on individualized consideration of the nature of the crime or the offender's personal characteristics. *Id.* at 157-58.

---

[13] On this point, we disagree with the majority's analysis in *Christopher Minor*, which concluded that a clear and unequivocal rule of law was not breached because "the criminal gang offenses enhancement statute was in full effect at the time of the defendant's convictions and sentencing." 2017 WL 634781, at *9.

After careful consideration of the law and the record, we conclude that Defendant has shown that he is entitled to relief from his criminal gang enhancement because it was imposed pursuant to an unconstitutional statutory provision.

## C. Drug-Free School Zone Enhancement

Although not raised by either party, we take note of another issue of plain error regarding the Drug-Free School Zone enhancements for counts one and two. The indictment charges Defendant with possession of more than one-half (.5) grams of cocaine with intent to sell and deliver within 1000 feet of a *preschool*. Pursuant to Tennessee Code Annotated section 39-17-432(b)(3), committing the charged offenses within 1000 feet of a preschool results only in an increased fine—it does not authorize "additional incarceration." *See State v. Mario Andre McElrath*, No. W2006-02621-CCA-R3-CD, 2007 WL 4245723, at *5 (Tenn. Crim. App. Dec. 3, 2007) (concluding under plain error review "that although the defendant's fine [was] within the range set by the [Drug-Free School Zone Act], his period of incarceration cannot be increased by its application because it exempts from its coverage, for incarceration purposes, preschools and day care centers"). In this case, the trial court ordered the minimum sentence for a Class A felony—fifteen years. T.C.A. § 40-35-112(a)(1). However, without the criminal gang enhancement, the trial court should have considered Defendant's sentence based on the Class B felony range of "not less than eight (8) nor more than twelve (12) years." T.C.A. § 40-35-112(a)(2). We are convinced that all of the factors for plain error relief described above are satisfied. *See Gomez II*, 239 S.W.3d at 737.

Because this case involved a preschool, Defendant gets the advantage of not being subject to additional incarceration that normally comes with a Drug-Free School Zone enhancement. T.C.A. § 39-17-432(b)(3). He maintains the Class B felony classification range for incarceration purposes. He still suffers the requirement of serving at least the minimum sentence for his appropriate range as well as not being eligible for any sentence reduction credits prior to full service of the minimum sentence. T.C.A. § 39-17-432(c)-(d). Additionally, Defendant is subject to a fine of not less than $2000, T.C.A. § 39-17-428(b)(9), and not more than $100,000, T.C.A. § 39-17-417(c)(1). Further, Defendant shall be subject to an *additional* fine of not more than $60,000. T.C.A. § 39-17-432(b)(2)(D), (b)(3).

Thus, on remand, Defendant must be sentenced as a standard offender within the Class B range of eight to twelve years, and the first eight years must be served at 100%. For purposes of completion of the Uniform Judgment Document, as required by Tennessee Code Annotated section 40-35-209(e) and Tennessee Supreme Court Rule 17, Defendant's indicted and convicted classification in counts one and two shall be listed as Class B felonies, with the notation that the offenses occurred "in DFZ-Preschool." His

offender status should be indicated as "standard" while his release eligibility shall be "Standard / Drug Free Zone." Finally, to be in accordance with article VI, section 14 of the Tennessee Constitution, the trial court in this case is limited to a maximum fine of $30,000 as imposed by the jury at Defendant's trial.[14] Thus, the trial court may impose a total fine anywhere between $2000 and $30,000.

We understand that this attention to detail may seem a bit like obtrusive meddling on the part of this Court. However, through no fault of the trial courts, such scrutiny has become necessary because statutory modifications made without regard to the Tennessee Criminal Sentencing Reform Act of 1989 have produced, and will continue to cause, incongruent sentencing snares for the foreseeable future. As the State has previously pointed out, the Drug-Free School Zone statute is "poorly worded." *See State v. Devon Wiggins*, No. W2007-01734-CCA-R3-CD, 2009 WL 1362323, at *9 (Tenn. Crim. App. May 15, 2009), *perm. app. denied* (Tenn. Dec. 21, 2009). The sentencing process gets very dicey when a trial court and this Court, as both courts must, attempt to reconcile the Drug-Free School Zone Act with Tennessee Code Annotated sections 39-17-417, -428; 40-35-110 to -112, -118; and 40-35-209, just to name a few.

D. Clerical Errors

Furthermore, we must remand for entry of corrected judgments to rectify clerical errors. *See* Tenn. R. Crim. P. 36. The first count of the indictment is for possession of more than .5 grams of cocaine with intent to deliver, and the second count of the indictment is for possession of more than .5 grams of cocaine with intent to sell. As entered, the judgment form for count one identifies the offense as possession with intent to sell while the judgment form for count two does not specify whether the offense is for manufacturing, delivering, selling, or possessing. On remand, the judgments should reflect that count one is for possession with intent to deliver and that count two is for possession with intent to sell. Additionally, both judgment forms should reflect that count two was merged into count one. *See State v. Berry*, 503 S.W.3d 360 (Tenn. 2015) (order).

Also, the judgment form for count one identifies the offense as occurring within 1000 feet of a daycare. However, the indictment states that the offense occurred within 1000 feet of a preschool, and the proof at trial likewise indicated that the vehicle in which Defendant was riding drove by Fair Garden Preschool. On remand, the indicted offense name and the conviction offense name on the judgment form for count one should reflect that the offense occurred within 1000 feet of a preschool, not a daycare.

---

[14] The trial judge reduced this amount to $3000 at Defendant's sentencing hearing.

Finally, the judgment form for count two does not state that the indicted offense occurred within 1000 feet of a drug-free school zone. Moreover, the judgment form for count two incorrectly identifies the controlled substance as methamphetamine. The indictment states that the offense was possession of more than .5 grams of cocaine with intent to sell within 1000 feet of a preschool. On remand, the indicted offense name and the conviction offense name should reflect the proximity to the preschool and the possession of cocaine, not methamphetamine.

*Conclusion*

Based on the foregoing reasons, the criminal gang enhancement applied to Defendant's convictions of possession of cocaine with intent to sell or deliver and his conviction of unlawful possession of a weapon are vacated, and the case is remanded for new sentencing on those convictions in accordance with this opinion. Additionally, Defendant's convictions of possession of cocaine with intent to sell or deliver as enhanced by the Drug-Free School Zone Act are remanded for resentencing in accordance with this opinion. We also remand those judgments for correction of clerical errors regarding the names of the offenses. Defendant's conviction and sentence for the unlawful possession of a firearm during the commission of a dangerous felony remain unaffected by our decision.

_____
TIMOTHY L. EASTER, JUDGE